**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

JULIE BUENO, DARLENE HOLLINS, and
DAVID BUENO, individually and as
representatives on behalf of a class of similarly
situated persons,

      Plaintiffs,

  v.

GENERAL ELECTRIC COMPANY, THE
BOARD OF DIRECTORS OF GENERAL
ELECTRIC COMPANY, H. LAWRENCE
CULP, JR., THE GENERAL ELECTRIC
COMPANY PENSION BOARD, THE
COMMITTEE, FIDUCIARY COUNSELORS,
INC., and JOHN DOES 1–5,

      Defendants.

Civil Action No. 1:24-cv-00822-GTS-DJS

---

**FIDUCIARY COUNSELORS INC.'S MEMORANDUM OF LAW**
**IN SUPPORT OF ITS MOTION TO DISMISS THE AMENDED COMPLAINT**

O'MELVENY & MYERS LLP

1301 Avenue of the Americas
New York, NY 10019
(212) 326–2000

*Counsel for Fiduciary Counselors Inc.*

# TABLE OF CONTENTS

<b>Page</b>

PRELIMINARY STATEMENT ................................................................................... 1

FACTUAL BACKGROUND ..................................................................................... 2

LEGAL STANDARD ................................................................................................. 3

ARGUMENT ............................................................................................................... 4

    I.     THE AMENDED COMPLAINT DOES NOT ALLEGE ARTICLE III
           STANDING. ............................................................................................... 4

          A.     Plaintiffs Plead No Present Impairment to Their Pension Benefits. .......... 5

          B.     Plaintiffs' Speculation About Athene's Future Operations Cannot
               Establish an Actual or Threatened Injury. ................................................. 6

          C.     Plaintiffs' Claimed Loss of ERISA Protections Does Not Give
               Them Standing. ........................................................................................ 10

    II.    PLAINTIFFS HAVE FAILED TO PLAUSIBLY ALLEGE THAT FCI
           BREACHED ITS FIDUCIARY DUTIES. ................................................. 11

          A.     Plaintiffs Have Not Adequately Alleged That FCI Acted
               Disloyally. ............................................................................................... 11

          B.     Plaintiffs Do Not Plausibly Allege That FCI Acted Imprudently. .......... 14

               1.     Plaintiffs' reliance on IB 95-1 is misplaced. ............................... 15

               2.     The Amended Complaint's allegations do not support an
                     inference of an imprudent process. ............................................. 16

          C.     Plaintiffs Allege No Plausible Co-Fiduciary Liability Claim
               Against FCI. ............................................................................................ 20

    III.   PLAINTIFFS' PROHIBITED TRANSACTION CLAIMS FAIL AS A
           MATTER OF LAW. ................................................................................. 21

          A.     Plaintiffs Do Not State a Claim Under ERISA Section 406(a). .............. 21

          B.     Plaintiffs Do Not State a Self-Dealing Claim Under ERISA
               § 406(b) Either. ...................................................................................... 24

          C.     Plaintiffs' Non-Fiduciary Liability and Monitoring Claims Make
               No Sense As Against FCI. ....................................................................... 25

CONCLUSION .......................................................................................................... 25

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Amato v. W. Union Int'l, Inc.*,
   773 F.2d 1402 (2d Cir. 1985) ................................................................. 25

*Amidax Trading Grp. v. S.W.I.F.T. SCRL*,
   671 F.3d 140 (2d Cir. 2011) ..................................................................... 4

*Anderson v. Advance Publ'ns, Inc.*,
   2023 WL 3976411 (S.D.N.Y. June 13, 2023) ...................................... 11

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................... 4

*Beatty v. Tong*,
   659 F. Supp. 3d 219 (D. Conn. 2023) .................................................... 11

*Beck v. PACE Int'l Union*,
   551 U.S. 96 (2007) ................................................................................... 10

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................... 4

*Bloom v. AllianceBernstein L.P.*,
   725 F. Supp. 3d 325 (S.D.N.Y. 2024) ................................................... 21

*Bunch v. W.R. Grace & Co.*,
   555 F.3d 1 (1st Cir. 2009) ...................................................................... 12

*Burke v. Boeing Co.*,
   42 F.4th 716 (7th Cir. 2022) .................................................................. 12

*Bussian v. RJR Nabisco, Inc.*,
   223 F.3d 286 (5th Cir. 2000) ......................................................... passim

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013) .............................................................................. 6, 9

*Cunningham v. Cornell Univ.*,
   86 F.4th 961 (2d Cir. 2023), *cert. granted*, 145 S. Ct. 118 (2024) ....... 23

*D.L. Markham DDS, MSD, Inc. 401(k) Plan v. Variable Annuity Life Ins. Co.*,
   88 F.4th 602 (5th Cir. 2023) .................................................................. 23

*David v. Alphin*,
   704 F.3d 327 (4th Cir. 2013) .............................................................. 6, 10

ii

## TABLE OF AUTHORITIES
### (continued)

**Page**

*DiFelice v. U.S. Airways, Inc.*,
  497 F.3d 410 (4th Cir. 2007) ................................................ 12

*Donovan v. Bierwirth*,
  680 F.2d 263 (2d Cir. 1982) ............................................. 14, 25

*Donovan v. Cunningham*,
  716 F.2d 1455 (5th Cir. 1983) ............................................. 21

*Duncan v. Muzyn*,
  885 F.3d 422 (6th Cir. 2018) ............................................. 6, 7

*Dupree v. Prudential Ins. Co. of Am.*,
  2007 WL 2263892 (S.D. Fla. Aug. 7, 2007), *as amended* (Aug. 10, 2007) .......................... 18

*Ferguson v. Ruane Cunniff & Goldfarb Inc.*,
  2019 WL 4466714 (S.D.N.Y. Sept. 18, 2019) ............................. 11, 14

*Fifth Third Bancorp v. Dudenhoeffer*,
  573 U.S. 409 (2014) .................................................... 4, 17

*Haley v. Tchrs. Ins. & Annuity Ass'n of Am.*,
  2021 WL 4481598 (S.D.N.Y. Sept. 30, 2021) ............................... 23

*Hughes Aircraft Co. v. Jacobson*,
  525 U.S. 432 (1999) ...................................................... 10

*In re Bear Stearns Cos. Sec., Derivative, & ERISA Litig.*,
  763 F. Supp. 2d 423 (S.D.N.Y. 2011) ..................................... 21

*In re Fid. ERISA Float Litig.*,
  829 F.3d 55 (1st Cir. 2016) .............................................. 24

*In re Unisys Sav. Plan Litig.*,
  74 F.3d 420 (3d Cir. 1996) ............................................... 14

*In re WorldCom, Inc. ERISA Litig.*,
  263 F. Supp. 2d 745 (S.D.N.Y. 2003) ...................................... 9

*Innis v. Bankers Tr. Co. of S.D.*,
  2017 WL 4876240 (S.D. Iowa Oct. 13, 2017) ............................... 25

*Kendall v. Emps. Ret. Plan of Avon Prods.*,
  561 F.3d 112 (2d Cir. 2009) .............................................. 9

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Kirschbaum v. Reliant Energy, Inc.*,
  526 F.3d 243 (5th Cir. 2008) ............................................... 11

*Kopp v. Klein*,
  894 F.3d 214 (5th Cir. 2018) ............................................... 17

*Lacewell v. Off. of Comptroller of Currency*,
  999 F.3d 130 (2d Cir. 2021) ................................................ 4

*Lee v. Verizon Commc'ns Inc.*,
  954 F. Supp. 2d 486 (N.D. Tex. 2013) .................................. 6

*Lee v. Verizon Commc'ns, Inc.*,
  837 F.3d 523 (5th Cir. 2016) ..................................... 6, 7, 9, 11

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) .................................................... 4, 6, 11

*Manigault v. Spry*,
  2024 WL 1345340 (N.D.N.Y. Mar. 28, 2024) ......................... 3

*Maroney v. Woodstream Corp.*,
  695 F. Supp. 3d 448 (S.D.N.Y. 2023) .................................. 16

*Marshall v. Carroll*,
  1980 U.S. Dist. LEXIS 17767 (N.D. Cal. Apr. 18, 1980), *aff'd sub nom.*
  *Donovan v. Carroll*, 673 F.2d 1337 (9th Cir. 1982) ................ 22

*Morse v. Stanley*,
  732 F.2d 1139 (2d Cir. 1984) ............................................. 13

*NationsBank of N.C., N.A. v. Variable Annuity Life Ins. Co.*,
  513 U.S. 251 (1995) ....................................................... 22

*New Orleans ILA Pensioners Ass'n v. Bd. of Trs. of New Orleans Emps. Int'l*
  *Longshoremen's Ass'n AFL-CIO Pension Fund*,
  2008 WL 215654 (E.D. La. Jan. 24, 2008) .............................. 8

*Parker v. Halftown*,
  2024 WL 4651794 (N.D.N.Y. Nov. 1, 2024) ............................. 4

*Pension Benefit Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v.*
  *Morgan Stanley Inv. Mgmt. Inc.*,
  712 F.3d 705 (2d Cir. 2013) ............................................ 4, 14

iv

**TABLE OF AUTHORITIES**
(continued)

Page

*Perelman v. Perelman*,
   793 F.3d 368 (3d Cir. 2015) .................................................................. 8

*Ramos v. Banner Health*,
   1 F.4th 769 (10th Cir. 2021) ................................................................ 23

*Renfro v. Unisys Corp.*,
   671 F.3d 314 (3d Cir. 2011) ................................................................ 21

*Riley v. Murdock*,
   83 F.3d 415 (4th Cir. 1996) ................................................................ 16

*Rothman v. Gregor*,
   220 F.3d 81 (2d Cir. 2000) ................................................................ 20

*Sea Shore Corp. v. Sullivan*,
   158 F.3d 51 (1st Cir. 1998) ................................................................ 9

*Silsby v. Icahn*,
   17 F. Supp. 3d 348 (S.D.N.Y. 2014) ................................................... 9

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016) ........................................................................... 4

*Steel Co. v. Citizens for a Better Env't*,
   523 U.S. 83 (1998) ............................................................................. 5

*Thole v. U.S. Bank N.A.*,
   590 U.S. 538 (2020) ........................................................................ 5, 6

*Tibble v. Edison Int'l*,
   639 F. Supp. 2d 1074 (C.D. Cal. 2009), *aff'd*, 711 F.3d 1061 (9th Cir. 2013),
   *and aff'd*, 729 F.3d 1110 (9th Cir. 2013), *and aff'd*, 820 F.3d 1041 (9th Cir.
   2016) ................................................................................................ 25

*Tracey v. Mass. Inst. of Tech.*,
   404 F. Supp. 3d 356 (D. Mass. 2019) ............................................... 24

*Varity Corp. v. Howe*,
   516 U.S. 489 (1996) ......................................................................... 13

*Vellali v. Yale Univ.*,
   308 F. Supp. 3d 673 (D. Conn. 2018) ............................................... 13

*Watterson v. Page*,
   987 F.2d 1 (1st Cir. 1993) ................................................................. 3

**TABLE OF AUTHORITIES**
(continued)

Page

*Waxman v. Cliffs Nat. Res. Inc.*,
   222 F. Supp. 3d 281 (S.D.N.Y. 2016) ...................................................................... 9

**STATUTES**

29 U.S.C. § 1002(14)(B) ............................................................................. 22, 23

29 U.S.C. § 1056(d)(1) ................................................................................... 10

29 U.S.C. § 1104(a)(1)(B) .............................................................................. 14

29 U.S.C. § 1105(a)(1) ................................................................................... 21

29 U.S.C. § 1105(a)(2) ................................................................................... 21

29 U.S.C. § 1105(a)(3) ................................................................................... 21

29 U.S.C. § 1106(a) ....................................................................................... 21

29 U.S.C. § 1106(b) ....................................................................................... 21

29 U.S.C. § 1106(b)(1) ................................................................................... 24

29 U.S.C. § 1106(b)(2) ................................................................................... 24

29 U.S.C. § 1108(b)(17) ................................................................................. 24

29 U.S.C. § 1341 ............................................................................................ 10

Iowa Code § 507C.2.14.b ................................................................................ 7

Iowa Code § 508.16 .......................................................................................... 9

Iowa Code § 508A.1 .......................................................................................... 7

Iowa Code § 511.8 ............................................................................................ 9

Iowa Code § 521E.2–6 .................................................................................... 19

N.Y. Ins. Law § 1304 ........................................................................................ 9

N.Y. Ins. Law § 1322 ...................................................................................... 19

N.Y. Ins. Law § 1403 ........................................................................................ 9

N.Y. Ins. Law § 1405 ........................................................................................ 9

N.Y. Ins. Law § 309 .......................................................................................... 9

**TABLE OF AUTHORITIES**
(continued)

Page

N.Y. Ins. Law § 7435(b) ................................................................................................ 7

**<u>REGULATIONS</u>**

29 C.F.R. § 2509.95-1(c) ................................................................................. 12, 16, 17

29 C.F.R. § 2509.95-1(c)(5) ...................................................................................... 18

29 C.F.R. § 2509.95-1(c)(6) ................................................................................. 15, 18

29 C.F.R. § 2509.95-1(d) ...................................................................................... 15, 18

**<u>OTHER AUTHORITIES</u>**

68 Fed. Reg. 75632 (Dec. 31, 2003) ......................................................................... 12

71 Fed. Reg. 5887 (Feb. 3, 2006) .............................................................................. 23

DOL Adv. Opinion Ltr. No. 76-36, 1976 WL 5051 (Jan. 15, 1976) ........................... 22

H.R. Conf. Rep. No. 93-1280, reprinted in 1974 U.S.C.C.A.N. 5038 .................... 21, 25

**PRELIMINARY STATEMENT[1]**

Plaintiffs in this case are former participants in the GE Pension Plan.  As the result of a common transaction known as a pension risk transfer or "PRT," their pension benefits are now paid in full and guaranteed by a large annuity provider, Athene, rather than the Plan itself, which Plaintiffs allege had long been underfunded.  Plaintiffs have timely received every penny of their periodic pension payments, and their right to future pension benefits is undiminished.  They are, however, dissatisfied with the insurer selected to provide their annuities and have sued several Defendants, including Fiduciary Counselors Inc. ("FCI")—the independent fiduciary retained to make the Plan's selection decision—for alleged breaches of ERISA fiduciary duties.

Plaintiffs' claims fail at the threshold because Plaintiffs haven't alleged an actual or imminent injury traceable to the fiduciary conduct they challenge and thus have no Article III standing.  While they complain that they no longer enjoy ERISA protections, that "loss" cannot be traced to FCI's selection of Athene: It was, instead, the non-fiduciary decision by GE to engage in a PRT in the first place that ensured that ERISA would cease to govern their benefits no matter whom FCI chose as the annuity provider.  And Plaintiffs' efforts to frame Athene as riskier than some other insurers do not establish the "certainly impending" harm necessary for a possible future injury to be cognizable.  Indeed, in attempting to make their case for enhanced risk, Plaintiffs all but ignore the first layer of protection shielding Plaintiffs' benefits—the segregation of assets in a separate account insulated by law from Athene's general creditors.

---

[1] All "Ex." cites are to the exhibits attached to the accompanying Declarations of Stephen Caflisch (Exs. A–B) and William D. Pollak (Exs. C–I).  Unless otherwise indicated, all emphasis is supplied, and internal quotations and citations are omitted.  In addition, FCI expressly incorporates Sections I–III of GE's motion to dismiss ("GE's Motion") and the arguments contained therein.  This motion refers to General Electric Co.  as "GE"; the GE Pension Plan as the "Plan"; the Amended Complaint as "AC"; and Athene Annuity and Life Company and Athene Annuity & Life Assurance Company of New York collectively, as "Athene."

Plaintiffs' allegations do not establish that the separate account backing Plaintiffs' benefits is not safely or prudently invested or that the account's assets are insufficient to ensure the payment of all future benefits. That alone is enough to defeat any claim of cognizable injury. That there are additional layers of protection beyond the separate account further confirms the conclusion.

Plaintiffs also fail to state a plausible claim against FCI. Plaintiffs offer nothing beyond implausible speculation to suggest that FCI acted disloyally. And while Plaintiffs try to imply that FCI employed an imprudent process simply by criticizing its final outcome (the choice of Athene), they say nothing about the other insurers who bid on the Plan's business or the terms they offered. Plaintiffs' claims for supposed violations of ERISA's prohibited transaction provisions fare no better. ERISA's prohibitions on transactions between plans and "parties in interest" do not apply because Athene was not a party in interest, and, in any event, the PRT was subject to an exemption from those prohibitions. And ERISA's rules prohibiting fiduciaries from self-dealing or representing both sides in a plan transaction have no application because Plaintiffs do not sufficiently allege that FCI did either.

The Amended Complaint fails to allege either Article III standing or a proper basis for liability against FCI and must be dismissed with prejudice.

## FACTUAL BACKGROUND

GE is a publicly traded company that supplies aircraft engines. AC ¶ 16. Among other benefits, GE provides eligible employees with access to a defined-benefit pension plan that provides fixed monthly pension benefits. *See id.* ¶¶ 11, 104–106. Plaintiffs allege that the Plan has a long history of being underfunded with a deficit of over $31 billion in 2016. *Id.* ¶ 104.

This case stems from a partial pension risk transfer transaction that occurred in December 2020 between the Plan and Athene. *Id.* ¶ 3. The Plan purchased group annuity contracts ("GACs") from Athene that covered all future pension benefit payments for certain Plan

participants.  *Id.* ¶ 32.[2]  The PRT at issue here covered only those Plan participants receiving

pension payments of less than $360 per month, representing roughly 3% of the Plan's pension

obligations and affecting less than 25% of Plan participants.  *Id.* ¶¶ 3, 12.  The PRT guaranteed

participants the same exact benefits that they were entitled to under the Plan, but payments now

come from Athene, instead of the Plan.  *Id.* ¶ 30.

GE did not select Athene.  Rather, FCI was appointed to act as an independent fiduciary

for the Plan in choosing an annuity provider.  *Id.* ¶¶ 22, 114.  FCI is "an experienced consultant"

that specializes in providing "independent fiduciary" services.  *Id.* ¶¶ 22, 124.  Based on FCI's

selection decision, the PRT's terms were reduced to GACs between GE and Athene, which

irrevocably guarantee the benefits of each retiree.[3]  Exs. A–B, GACs § 1.2.  The GACs provide

that GE's contributions will be held in a "separate account" which is insulated from Athene's

non-pension liabilities.  *Id*. §§ 1.2, 1.5.  GE and Athene agreed that the separate account is

"intended to be invested primarily in investment-grade fixed income securities, but other

investments are permitted." *Id.* § 1.4.  In the event of Athene's insolvency, the separate account's

assets are not available to satisfy the claims of outside creditors.  *Id*. § 1.5.  And if a shortfall

ever develops in the separate account, Athene's general account must support the separate

account's obligations.  *Id*. §§ 1.3, 1.6.

## LEGAL STANDARD

To survive a Rule 12(b)(1) challenge, a plaintiff "bears the burden of establishing":

---

[2] There are two GACs—one with Athene Annuity and Life Company (Ex. A) and one with Athene Annuity & Life Assurance Company of New York (Ex. B).  Unless otherwise noted, the cited provisions are identical in both GACs.

[3] The GACs may be considered because "the complaint relies heavily upon [their] terms and effect, thereby rendering [them] integral to the complaint." *Manigault v. Spry*, 2024 WL 1345340, at *3 (N.D.N.Y. Mar. 28, 2024); *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993) (same).

(1) that he has suffered an injury in fact that is (2) fairly traceable to the defendant's challenged conduct and (3) likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Courts dismiss claims for lack of standing when the complaint fails to plausibly allege an injury that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992); *Lacewell v. Off. of Comptroller of Currency*, 999 F.3d 130, 147 (2d Cir. 2021). When a defendant brings a facial challenge to jurisdiction under Rule 12(b)(1), as here, the Court should determine whether it has jurisdiction based on any well-pleaded allegations in the complaint and any incorporated or judicially noticeable documents. *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011); *Parker v. Halftown*, 2024 WL 4651794, at *9 (N.D.N.Y. Nov. 1, 2024).

Under Rule 12(b)(6), a complaint must be dismissed if it does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In the ERISA context in particular, motions to dismiss are an "important mechanism for weeding out meritless claims." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014); *Pension Benefit Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.* ("*PBGC*"), 712 F.3d 705, 718–19 (2d Cir. 2013) (courts should take "particular care" in evaluating ERISA claims because "the prospect of discovery in a suit claiming breach of fiduciary duty is ominous" and even "groundless claim[s]" will "force a settlement"). To withstand a motion to dismiss, "the complaint must demonstrate more than a sheer possibility that a defendant has acted unlawfully." *PBGC*, 712 F.3d at 718.

## ARGUMENT

### I.    THE AMENDED COMPLAINT DOES NOT ALLEGE ARTICLE III STANDING.

Plaintiffs do not allege any concrete injury under Article III. They do not and cannot

allege that the selection of Athene has resulted in any shortfall in their pension benefit payments or that the annuities purchased from Athene do not guarantee the full amount of their future benefits. Plaintiffs attempt to make up for this shortcoming by alleging that the PRT eliminates their procedural protections under ERISA, but that allegation fails to establish an Article III injury because the loss of ERISA coverage cannot be traced to a fiduciary act, much less one by FCI. Their fallback contention, in turn, that they may someday in the future fail to be paid simply does not describe an actual or imminent harm. Plaintiffs have thus failed to allege a concrete injury as they must to sustain Article III standing.

A.    **Plaintiffs Plead No Present Impairment to Their Pension Benefits.**

Article III standing requires "an injury in fact—a harm suffered by the plaintiff that is concrete and actual or imminent, not conjectural or hypothetical." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998). The Supreme Court has made clear that where, as here, a plaintiff's claims relate to defined pension benefits, Article III generally requires the plaintiff to allege a denial of or reduction in the promised benefit payments. *Thole v. U.S. Bank N.A.*, 590 U.S. 538, 541–42 (2020). Plaintiffs do not (and cannot) do so here.

In *Thole*, the participant plaintiffs alleged that mismanagement of their defined-benefit plan had led to "approximately $750 million in losses [to] the plan." *Id.* at 541. As the Supreme Court observed, however, participants in a defined-benefit plan "receive a fixed payment each month, and the payments do not fluctuate with the value of the plan." *Id.* at 540. The Court reasoned that, as a result, "[w]inning or losing the suit w[ould] not change the plaintiffs' monthly pension benefits" and "[they] would still receive the exact same monthly payments that they [we]re already slated to receive, not a penny less," and "not a penny more." *Id.* at 541–42, 547. The Supreme Court thus affirmed dismissal of the claims for lack of standing because the plaintiffs "ha[d] been paid all of their monthly pension benefits" and were "contractually entitled

5

to receive those same monthly payments for the rest of their lives." *Id.* at 540; *accord, e.g.*, *Duncan v. Muzyn*, 885 F.3d 422, 427–29 (6th Cir. 2018); *Lee v. Verizon Commc'ns, Inc.*, 837 F.3d 523, 544–48 (5th Cir. 2016); *David v. Alphin*, 704 F.3d 327, 334–39 (4th Cir. 2013).

The same is true here. As in *Thole*, if Plaintiffs "had not received their vested pension benefits, they would of course have Article III standing to sue." 590 U.S. at 542. But Plaintiffs do not allege that they've been denied a penny of the benefits they were promised, or that the annuities purchased under the PRT fail to promise them their full pension entitlements henceforth. Plaintiffs thus have alleged no present injury under Article III.

### B.    Plaintiffs' Speculation About Athene's Future Operations Cannot Establish an Actual or Threatened Injury.

Nor can Plaintiffs establish Article III standing by raising the speculative possibility that they could be injured at some unknown point years in the future. An Article III injury must be "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560. A complaint asserting future injury must plausibly allege imminence "to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).[4] In the ERISA context, courts have recognized that the "risk that . . . pension benefits will at some point in the future be adversely affected . . . is too speculative to give rise to Article III standing." *David*, 704 F.3d at 338; *Lee v. Verizon Commc'ns Inc.*, 954 F. Supp. 2d 486, 498 (N.D. Tex. 2013) (allegation that pension risk transfer transaction "jeopardize[d] the financial security of the pension benefits" insufficient to confer standing); *Thole*, 590 U.S. at 546. Instead, Plaintiffs must plausibly allege that they are at

---

[4] While courts have in some circumstances articulated the standard as requiring a "substantial risk" and a "substantial probability" of harm rather than a "certainly impending" harm, the Supreme Court indicated doubt in *Clapper* as to whether there is any distinction between the two articulations. 568 U.S. at 414 n.5. In any event, Plaintiffs' allegations fall short under either articulation given the highly attenuated nature of the risk they contend exists.

*imminent* risk of being denied their annuity payments—*i.e.*, that there is an immediate risk of default. *See, e.g.*, *Lee*, 837 F.3d at 546 ("constitutional standing for defined-benefit plan participants requires *imminent risk of default by the plan*"); *Duncan*, 885 F.3d at 428 (no Article III injury where "depleting the savings account did not put the Plan at risk of default").

Plaintiffs' allegations come nowhere close to meeting this standard. Athene's payment obligations are secured by multiple layers of protection. And, while they devote most of their Amended Complaint trying to portray Athene as a riskier company than some other insurers in the market, Plaintiffs fail to tie those allegations regarding Athene's general practices and financial condition to the very first of those protections—the contractual requirement that assets supporting the pension benefits be walled off in a separate account. Specifically, under the GACs' terms, premiums paid by the Plan did not go into Athene's general coffers, but rather were paid into a separate account dedicated to fully funding benefits owed under group annuity contracts issued by Athene and shielded under state law from Athene's general creditors. Exs. A–B, GACs §§ 1.5, 1.6; *see* N.Y. Ins. Law § 7435(b); Iowa Code §§ 507C.2.14.b, 508A.1. The security of the separate account thus does not depend on the general creditworthiness of Athene or on the relationship between assets and liabilities in the company as a whole. *See* AC ¶¶ 56–62; 95–102. And, while Plaintiffs have alleged that Athene as a whole invests in "risky assets" and engages in certain insurance practices, AC ¶¶ 62–76, Plaintiffs do not allege whether or to what extent that is true for the separate account—which is intended to invest "primarily in investment-grade fixed income securities." Exs. A–B, GACs § 1.4.

Rather, Plaintiffs' only allegation regarding the separate account is that it supposedly is not truly "ring-fenced" because it supports multiple GACs and because assets may be subject to transfer from the separate account to Athene's general account. AC ¶ 77. But, as Plaintiffs

concede, such a transfer can only occur if and to the extent that the separate account has a *surplus*, *id.*, and the GACs provide that the determination of such a surplus must take into account the amounts owed under *all* GACs supported by the separate account. Exs. A–B, GACs § 1.6. Plaintiffs do not allege that Athene has violated that provision or that the assets in the separate account have otherwise fallen below the amount necessary to fully fund all future benefits. That is, Plaintiffs do not allege the separate account—shielded from Athene's general creditors—does not have safely invested assets sufficient to pay all pension obligations going forward. That omission alone precludes any inference of an imminent harm. *See Perelman v. Perelman*, 793 F.3d 368, 375 (3d Cir. 2015) (risk of default is speculative where plan is appropriately funded and there is no obligation to make contributions to stabilize plan finances); *New Orleans ILA Pensioners Ass'n v. Bd. of Trs. of New Orleans Emps. Int'l Longshoremen's Ass'n AFL-CIO Pension Fund*, 2008 WL 215654, at *3 (E.D. La. Jan. 24, 2008) (defined-benefit plan participants lacked standing where they failed to "establish that the remaining pool of assets will be inadequate to pay for the plan's outstanding liabilities").

Even if Plaintiffs could allege that the assets in the separate account are at risk of becoming insufficient to fund future benefits some day, that would still not establish imminent harm under Article III because the GACs require Athene to "establish and fund reserves in the General Account" if the separate account's assets fall below the amount necessary to meet liabilities at any point in the future. Exs. A–B, GACs § 1.6. And despite their attempt to frame Athene as risky relative to some other insurers, Plaintiffs do not allege that Athene faces a substantial risk of insolvency. Indeed, Plaintiffs' own allegations refute any such inference: They allege that Athene has a surplus of $2 billion and an "A" credit rating with Moody's, which Plaintiffs allege implies only a 5% risk of any degree of default over a 20-year time frame. AC

¶¶ 63, 65, 99.  They likewise acknowledge that Athene is subject to extensive regulatory

oversight and reviews from state insurance authorities who, among other things, set reserve and

capital requirements and regularly pressure-test Athene's investments to ensure an appropriate

level of risk.[5]  And, while Plaintiffs allege Athene is unduly exposed to riskier assets, AC ¶ 63,

they do not identify what percentage of Athene's portfolio is actually allocated to such assets—a

striking omission given Athene's reporting in government filings that, of the 95% of Athene's

investments that consist of fixed income instruments, over 95% are "investment grade," bearing

the highest NAIC rating of 1 or 2.[6]  Finally, the Amended Complaint acknowledges that, if the

panoply of the above protections failed and Athene were to default, Plaintiffs' benefits would

still be protected by state insurance guaranty associations, which provide a final safety net for

policyholders if an insurer is declared insolvent.  *See* AC ¶¶ 33, 35.  These acknowledgments

preclude Plaintiffs from premising standing on a supposed risk of some hypothetical future

injury.  *See* GE's Motion at 12–19.  Where, as here, the alleged injuries rest on a "highly

attenuated chain of possibilities," the Amended Complaint "does not satisfy the requirement that

threatened injury must be certainly impending." *Clapper*, 568 U.S. at 410.[7]

---

[5] Iowa Code §§ 508.16, 511.8; N.Y. Ins. Law §§ 309, 1304, 1403, 1405; *see also* Ex. C, Athene 2023 Annual Report ("Athene 10-K") at 188 (reporting that Athene Annuity & Life Assurance Company of New York is regulated by N.Y. law and Athene Annuity and Life Company is regulated by Iowa law); Exs. A–B, GACs §§ 1.1, 1.7 (GACs are subject to N.Y. and Iowa law); AC ¶ 51.  SEC filings may be considered on a motion to dismiss.  *See, e.g.*, *In re WorldCom, Inc. ERISA Litig.*, 263 F. Supp. 2d 745, 756 (S.D.N.Y. 2003) (taking judicial notice of SEC filings); *Silsby v. Icahn*, 17 F. Supp. 3d 348, 354 (S.D.N.Y. 2014) (same).

[6] Ex. C, Athene 10-K at 86.

[7] *See also Kendall v. Emps. Ret. Plan of Avon Prods.*, 561 F.3d 112, 121–22 (2d Cir. 2009) (no injury where claim is contingent on discretionary plan adjustments); *Lee*, 837 F.3d at 546 (when an alleged "direct injury to a participant['s] benefits is dependent on the realization of several additional risks," those contingencies "collectively render the injury too speculative to support standing"); *Sea Shore Corp. v. Sullivan*, 158 F.3d 51, 56 (1st Cir. 1998) (holding that injury is not "imminent" if "it depends upon several tenuous contingencies"); *Waxman v. Cliffs Nat. Res.*

Nor can Plaintiffs repackage their speculation about future risk into a present injury by claiming that "the market will assign a lower price to an annuity issued by a riskier annuity provider[.]" AC ¶ 128.  The supposed market value of Plaintiffs' pension benefits is irrelevant because their right to such benefits is not marketable: ERISA prohibits beneficiaries from selling or otherwise assigning their pension benefits,[8] as do the terms of the annuities.  *See* Exs. A–B, GACs § 2.3.  Plaintiffs' theory of diminished "present value" therefore rests on a false premise. Each of Plaintiffs was and still is entitled to a stream of fixed monthly payments, *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 439 (1999); *David*, 704 F.3d at 338, and Plaintiffs do not plausibly allege that they face an imminent risk of not receiving them in full.  GE's Motion at 10.

### C.    Plaintiffs' Claimed Loss of ERISA Protections Does Not Give Them Standing.

Plaintiffs' attempt to find cognizable injury in the fact that their annuities are no longer subject to "ERISA protections," AC ¶¶ 3, 33, 115, 131, does not suffice under Article III either. To begin, even assuming the cessation of ERISA coverage for Plaintiffs' benefits could qualify as a cognizable loss,[9] such a loss is not traceable to the conduct Plaintiffs challenge—the selection of Athene as annuity provider.  AC ¶¶ 141–43.  Rather, it was the direct consequence of the decision by the Plan's sponsor to engage in a PRT—regardless of which annuity provider FCI selected.  *Id.* ¶ 33; *Beck*, 551 U.S. at 106.  The decision to amend or terminate a plan to

---

*Inc.*, 222 F. Supp. 3d 281, 288 (S.D.N.Y. 2016) ("[T]he Court cannot decide a case with a hypothetical injury that may never occur.").

[8] *See* 29 U.S.C. § 1056(d)(1) ("benefits provided under the plan may not be assigned or alienated").

[9] ERISA expressly permits a plan sponsor to purchase annuities and provides that when a plan sponsor does so, ERISA ceases to govern the benefit obligations owed to the former plan participants.  29 U.S.C. § 1341; *see generally Beck v. PACE Int'l Union*, 551 U.S. 96, 101–09 (2007); *see also* AC ¶¶ 30, 33.  It is illogical to treat an annuity structure that ERISA explicitly permits as a cognizable harm to participants.

provide for the purchase of annuities covering the promised benefits is a settlor decision, not a fiduciary one. *See Beck*, 551 U.S. at 101–02 (explaining, in a case involving a pension risk transfer, that "an employer's decision whether to terminate an ERISA plan is a settlor function immune from ERISA's fiduciary obligations"); *Lee*, 837 F.3d at 535–36 (same); *Kirschbaum v. Reliant Energy, Inc.*, 526 F.3d 243, 251 (5th Cir. 2008) (same). The loss of ERISA coverage Plaintiffs decry thus did not depend on the fiduciary decision that the Amended Complaint attacks—the choice of annuity provider—and so is not an injury traceable to that decision. *See, e.g.*, *Beatty v. Tong*, 659 F. Supp. 3d 219, 230 (D. Conn. 2023) ("'[T]he injury has to be fairly traceable to the challenged action of the defendant[.]'") (quoting *Lujan*, 504 U.S. at 560). It follows that the claimed loss of ERISA coverage cannot suffice to establish an Article III injury.

## II. PLAINTIFFS HAVE FAILED TO PLAUSIBLY ALLEGE THAT FCI BREACHED ITS FIDUCIARY DUTIES.

Count I should also be dismissed for the independent reason that Plaintiffs have failed to plausibly allege that FCI breached its fiduciary duties of loyalty or prudence.

### A. Plaintiffs Have Not Adequately Alleged That FCI Acted Disloyally.

To state a claim for breach of the duty of loyalty, a plaintiff "must allege facts showing that a fiduciary acted *for the purpose* of providing benefits to itself or someone else." *Anderson v. Advance Publ'ns, Inc.*, 2023 WL 3976411, at *2 (S.D.N.Y. June 13, 2023); *see also Ferguson v. Ruane Cunniff & Goldfarb Inc.*, 2019 WL 4466714, at *4 (S.D.N.Y. Sept. 18, 2019). As to independent fiduciary FCI, Plaintiffs' allegations do not come close to meeting that requirement.

At the outset, Plaintiffs do not allege FCI *itself* actually benefited, either directly or indirectly, from the selection of Athene. The Amended Complaint, for example, does not allege that FCI's compensation was at all dependent on the selection of a particular insurer or even the completion of the PRT. Rather, Plaintiffs' theory hinges on speculation that FCI wanted to reach

a decision favorable to GE in the hopes that GE would hire FCI should GE happen to have some need to retain an independent fiduciary again in the future.  AC ¶ 124.  The same conjecture about the potential influence of the prospect of securing repeat business could be applied to any professional independent fiduciary in virtually any context.  Yet courts and the Department of Labor ("DOL") have repeatedly pointed to the retention of independent fiduciaries—including professional firms such as FCI—as a way to *avoid* conflicts of interest and otherwise promote adherence to ERISA's fiduciary standards.[10]  Indeed, as the Seventh Circuit recognized in *Burke v. Boeing Co*., "professional, independent third-party firms" "serve a valuable and legitimate purpose" and their use has not surprisingly grown "in prevalence and scope" due in part to the expertise they bring to bear.  42 F.4th 716, 732 (7th Cir. 2022).  It makes no sense to recognize the retention of skilled, outside fiduciaries as a means of avoiding conflicts only to treat a professional fiduciary's status as such as a basis for inferring disloyalty.

Indeed, Plaintiffs' speculative theory collapses upon itself.  As the very filing of the Amended Complaint underscores, employers that appoint professional fiduciaries face a risk that their selection and retention of such fiduciaries will be challenged in future litigation.  AC ¶¶ 159–62.  As a result, any professional fiduciary hypothetically considering its future prospects for being engaged to provide independent fiduciary services would have a strong—indeed,

---

[10] *See, e.g.*, *Bunch v. W.R. Grace & Co.*, 555 F.3d 1, 8 (1st Cir. 2009) (corporate management appropriately addressed potential conflict by hiring independent fiduciary); *Bussian v. RJR Nabisco, Inc*., 223 F.3d 286, 299 (5th Cir. 2000) ("In some instances, the only open course of action may be to appoint an independent fiduciary."); *DiFelice v. U.S. Airways, Inc*., 497 F.3d 410, 421 (4th Cir. 2007) (citing retention of "non-company fiduciary" to oversee company stock fund as evidence of prudent process); Class Exemption for the Release of Claims and Extension of Credit in Connection with Litigation, 68 Fed. Reg. 75632, 75634, 75638 (Dec. 31, 2003) (explaining that a plan should "hire an independent fiduciary" when settling ERISA litigation); *cf.* 29 C.F.R. § 2509.95-1(c) (IB 95-1 states that fiduciaries should obtain the advice of an independent expert to evaluate annuity providers).

existential—incentive not to compromise its judgment to curry favor with any one plan sponsor, as a judicial determination that a fiduciary fell short in meeting its ERISA obligations would inherently make the fiduciary a less attractive candidate for *any* prospective client.

Plaintiffs' further supposition that Athene may have charged lower premiums than other candidates, *id*. ¶¶ 120, 122, adds nothing to the plausibility of their speculative theory of disloyalty. Even accepting Plaintiffs' assumption that the selection of Athene conferred some incidental economic benefit on GE, the mere fact that a plan decision happens to benefit a plan's sponsor does not establish disloyalty. *Vellali v. Yale Univ.*, 308 F. Supp. 3d 673, 688 (D. Conn. 2018) ("[A] theory of breach based on incidental benefit, without more, cannot support a breach of loyalty claim."). The pertinent issue instead is whether FCI selected Athene "for the purpose" of benefiting itself or GE. Plaintiffs offer no factual allegations supporting an inference that FCI selected Athene for any such improper purpose.

Moreover, Plaintiffs' attempt to infer disloyalty from the mere possibility that Athene was the lowest cost provider offering annuities ignores that FCI had an obligation to consider the costs of the PRT to the Plan, and to those who would remain participants following the PRT. The PRT at issue was a "partial buyout," meaning that the pension obligations for only a subset of Plan participants were transferred from the Plan to Athene. AC ¶ 32; *see also id*. ¶¶ 12, 113 (the PRT transferred pension obligations for roughly a quarter of participants). The premiums paid to Athene were paid with Plan assets, and thus reduced the Plan assets supporting benefits for the remaining participants. *Id.* ¶ 30. As the Supreme Court has recognized, fiduciaries have an obligation to consider the interests of all participants and to "preserve assets" of a plan.[11]

---

[11] *Varity Corp. v. Howe*, 516 U.S. 489, 514 (1996) ("The common law of trusts recognizes the need to preserve assets to satisfy future, as well as present, claims and requires a trustee to take

Seeking not only to obtain appropriate annuities but to do so on economic terms favorable to the Plan was not just consistent with, but required by, the duty of loyalty.

### B.    Plaintiffs Do Not Plausibly Allege That FCI Acted Imprudently.

Plaintiffs have likewise failed to state a claim against FCI for a breach of the duty of prudence.  By its terms, ERISA's prudence standard requires that a fiduciary discharge its duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use[.]" ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B).  The prudence inquiry thus focuses on a fiduciary's process, "'not on its results, and ask[s] whether a fiduciary employed the appropriate methods to investigate and determine the merits of a particular investment.'" *PBGC*, 712 F.3d at 716 (quoting *In re Unisys Sav. Plan Litig.*, 74 F.3d 420, 434 (3d Cir. 1996)); *see also Ferguson*, 2019 WL 4466714, at *4 (same).  "The relevant inquiry in any case is whether the fiduciary, in structuring and conducting a thorough and impartial investigation of annuity providers, carefully considered such factors and any others relevant under the particular circumstances it faced at the time of decision." *Bussian*, 223 F.3d at 300.  "If so, a fiduciary satisfies ERISA's obligations if, based upon what it learns in its investigation, it selects an annuity provider it 'reasonably concludes best to promote the interests of [the plan's] participants and beneficiaries.'" *Id.* (quoting *Donovan v. Bierwirth*, 680 F.2d 263, 271 (2d Cir. 1982)).  "[W]here a plaintiff fails to allege facts about a defendant fiduciary's decision-making process, the claim may survive only if there are enough circumstantial factual allegations to allow the court to reasonably infer the process was flawed." *Ferguson*, 2019 WL 4466714, at *5.

---

impartial account of the interests of all beneficiaries."); *see also Morse v. Stanley*, 732 F.2d 1139, 1145 (2d Cir. 1984) ("The trustee must deal even-handedly among them, doing his best for the entire trust looked at as a whole.").

Plaintiffs' Amended Complaint, however, says nothing about FCI's process for selecting

Athene.  Rather, Plaintiffs rely on a misreading of a non-binding DOL interpretive bulletin—

Interpretive Bulletin 95-1 ("IB 95-1")—to suggest a results-oriented standard that a fiduciary

must identify and select the singular "safest annuity available." AC ¶ 141; *see also id.* ¶¶ 44–45.

Plaintiffs' interpretation of IB 95-1, however, is inconsistent with the full text of the bulletin and

with ERISA's express standards, as other courts have determined.  Read as a whole, the bulletin,

like ERISA itself, encourages fiduciaries to engage in multi-factored evaluation processes that

could reasonably lead to the conclusions that multiple annuities are equally appropriate and that

the "safest annuity" may not necessarily be the most appropriate for every plan in all

circumstances.  Plaintiffs' criticisms of Athene do not support an inference that FCI failed to

engage in such a holistic process in accordance with ERISA's prudence standard.  This is

particularly evident in the partial annuitization context here (where FCI was duty-bound to

consider the interests of participants remaining in the Plan), and given Plaintiffs' failure to offer

any allegations regarding the identity or nature of the other insurers who elected to bid for the

Plan's business or the terms they offered.

### 1.    *Plaintiffs' reliance on IB 95-1 is misplaced.*

Plaintiffs center their prudence claim on the contention that IB 95-1 requires a fiduciary

to isolate and select "the safest annuity." *See, e.g.*, AC ¶¶ 25, 44–45, 94, 139.  But, even if IB

95-1 were binding—it is not[12]—its plain text contradicts Plaintiffs' proffered interpretation.

IB 95-1 explicitly states that a "fiduciary may conclude, after conducting an appropriate search,

that more than one annuity provider is able to offer the safest annuity available." 29 C.F.R.

§ 2509.95-1(c)(6).  The bulletin, moreover, recognizes that a fiduciary need not select the "safest

---

[12] As the Fifth Circuit noted in *Bussian*, IB 95-1 is "not the product of notice-and-comment rulemaking" and so "does not have the force of law[.]" 223 F.3d at 297.

annuity" if circumstances, including costs and an insurer's ability to administer benefits, warrant a different choice. *Id*. §§ 2509.95-1(c)(6) & (d). To the extent that the bulletin attempts to draw a line in the sand at all, it is that costs and other considerations cannot justify purchasing an annuity that is "unsafe." Plaintiffs have not plausibly alleged that this characterization applies to the Athene annuities and cannot do so given the multiple layers of financial protection that surround those annuities. *See supra* at 7–9.

Notably, when the Secretary of Labor tried in litigation to leverage IB 95-1 to assert a "safest annuity" requirement, the appellate courts squarely rejected that effort. *See Bussian*, 223 F.3d at 298 ("[W]e are not persuaded that § 1104(a) imposes on fiduciaries the obligation to purchase the 'safest available annuity' in order to fulfill their fiduciary duties."); *Riley v. Murdock*, 83 F.3d 415 (4th Cir. 1996) (unpublished) (declining to apply "such a demanding standard" and noting that "no federal court has adopted" it). This Court should do the same here.

> 2.     *The Amended Complaint's allegations do not support an inference of an imprudent process.*

What the Fifth Circuit recognized as instructive in IB 95-1 was its recognition of a fiduciary's need to consider a range of factors, including but not limited to those expressly enumerated in IB 95-1. *Bussian*, 223 F.3d at 300; *see also* 29 C.F.R. § 2509.95-1(c) (identifying six factors as examples of "the types of factors a fiduciary should consider" "among other things"). Plaintiffs' criticisms of Athene, however, does not support an inference that FCI failed to conduct such a review. As discussed above and in GE's separately filed brief, those criticisms ignore the multiple layers of protection surrounding the annuities, and disregard judicially noticeable facts regarding Athene.[13] *Supra* at 7–9; GE's Motion at 11–19.

---

[13] The issues addressed above are not the only respects in which Plaintiffs' attempts to ascribe risk to the Athene annuities are misleading or overblown. Plaintiffs, for example, allege that two

Even beyond that, however, Plaintiffs' allegations regarding Athene cannot support an inference of imprudence because there are no allegations regarding what alternatives FCI had at the time of its decision or how those alternatives compared to the annuities offered by Athene. As courts have recognized, it is not enough for plaintiffs to criticize a particular result or fiduciary choice; they must allege enough facts to plausibly establish the existence of some prudent alternative course of action. *See Fifth Third Bancorp*, 573 U.S. at 428 (to make out claim for breach of fiduciary duty relating to inside information, complaint "must plausibly allege an alternative action that the defendant could have taken" that would have been lawful and would have avoided claimed injury); *Kopp v. Klein*, 894 F.3d 214, 221 (5th Cir. 2018) (plaintiff must "plausibly allege[] an alternative action that the Defendants would have taken" when challenging decision not to liquidate company stock).

The Amended Complaint does not meet that requirement. While the Amended Complaint cherry picks a few data points regarding some other insurers that have sold annuities in the past,[14] Plaintiffs do not allege that any of the identified providers actually elected to bid on the Plan's business here. *See Bussian*, 223 F.3d at 290 (noting that, although fiduciaries of the plans at issue in that case sought bids from fourteen annuity providers, only five elected to

---

Athene entities were ordered to pay civil penalties as the result of an investigation by the State of New York "regarding their pension risk transfer business[.]" AC ¶ 80. That investigation, however, did not concern the quality or safety of Athene's annuities but instead focused on the involvement of a non-New-York-domiciled Athene subsidiary in insurance transactions covering New York residents. *See* Ex. D, Consent Order, *In re Athene Annuity and Life Co., Athene Holding Ltd.*, New York State Dept. of Fin. Servs. (Apr. 13, 2020); *see also Maroney v. Woodstream Corp.*, 695 F. Supp. 3d 448, 453 (S.D.N.Y. 2023) ("Courts routinely take judicial notice of agency records, including consent orders, which are available to the public.").

[14] Notably, despite premising their prudence claim on IB 95-1, Plaintiffs attempt to establish Athene's supposed inferiority to other annuity providers by applying a narrower set of criteria than those specifically enumerated in the bulletin, let alone the broader set of factors the bulletin suggests should be considered. *Compare* AC ¶ 57, *with* 29 C.F.R. § 2509.95-1(c).

submit preliminary bids); 29 C.F.R. § 2509.95-1(c)(6) (referring to the "safest annuity *available*").[15] The Amended Complaint, in fact, offers no allegations regarding the identity or nature of the other annuity providers that chose to submit bids or the terms on which they did so. Plaintiffs do not, for example, allege anything about the structures of the annuity contracts the other bidders offered or whether they offered protections such as the separate account structure that Athene featured to secure benefits under the PRT.  *See* 29 C.F.R. § 2509.95-1(c)(5) (identifying the "guarantees supporting the annuities, such as the use of separate accounts" as factor to be considered); *Dupree v. Prudential Ins. Co. of Am.*, 2007 WL 2263892, at *46 (S.D. Fla. Aug. 7, 2007), *as amended* (Aug. 10, 2007) (finding that annuity product's structure, "in which separate account assets effectively act as collateral for the guaranteed benefits[,] is at least as protective of annuitized benefits as the safest conventional annuity").  They offer no allegations as to other bidders' ability to administer benefits.  *See* 29 C.F.R. § 2509.95-1(d) (recognizing that it may be in participants' interest not to choose annuity provider offering the "safest available annuity" if that provider cannot demonstrate ability to administer benefits). And, because they do not address alternative bidders at all, they offer no allegations as to whether any other offers were "disproportionately more expensive" than Athene, seeking to impose greater costs on a Plan that Plaintiffs portray as chronically underfunded.  *Id.*; AC ¶¶ 104–106.

The significance of this omission is underscored by the reporting by other annuity providers, including ones that Plaintiffs suggest were among the safest choices, that they engage in the very same practices that Plaintiffs contend rendered Athene relatively unsafe, including:

---

[15] Indeed, the Amended Complaint does not even allege that two of the four companies that Plaintiffs characterize as "peer insurers"—TIAA and Nationwide Life—are even in the PRT business.  *Compare* AC ¶ 59, *with id.* ¶¶ 91–92.

(i) use of Bermuda based reinsurers;[16] (ii) investments in collateralized loan obligations;[17] (iii) affiliated investments;[18] and (iv) use of modified co-insurance or "ModCo."[19] Similarly, other pension annuity providers, again including ones Plaintiffs suggest are safer, report lower risk-based-capital ratios than Athene.[20]

And the significance of Plaintiffs' omission is all the more conspicuous given the recently filed lawsuit challenging a PRT completed by Verizon's pension plans with Prudential's annuity provider subsidiary, Prudential Insurance Company of America. *See* Ex. H, Class Action Complaint, *Dempsey v. Verizon Commc'ns, Inc.*, Case No. 1:24-cv-10004 (S.D.N.Y.), ECF 1. In the Amended Complaint here (AC ¶ 92), Plaintiffs rely on a report that purports to identify Prudential as a "clear candidate" for a prudent annuity provider—indeed, the second safest annuity provider in the market.[21] By contrast, the *Dempsey* complaint (which tellingly

---

[16] *Compare* AC ¶¶ 68–70, *with* Ex. E, Prudential 2023 Annual Report ("Prudential 10-K") at 2, 24, 125 (reporting Bermuda-based reinsurance affiliates); Ex. F, MetLife 2023 Annual Report ("MetLife 10-K") at 108, 326 (same); Ex. G, AIG 2023 Annual Report ("AIG 10-K") at 10 (same).

[17] *Compare* AC ¶¶ 55, 63, *with* Ex. F, MetLife 10-K at 95, 98 (reporting holding $17 billion in CLO and asset-backed securities); Ex. E, Prudential 10-K at 113 (reporting $7.836 billion in CLOs); Ex. G, AIG 10-K at 89, 92, 154, 190 (reporting $29.9 billion in CLO/ABS).

[18] *Compare* AC ¶ 65, *with* Ex. E, Prudential 10-K at 16, 125, 338 (reporting affiliated investments); Ex. F, MetLife 10-K at 10, 12, 108, 116 (same); Ex. G, AIG 10-K at 20, 183, 255 (same); *see also* AC ¶ 66 (reporting New York Life had materially larger amount of affiliated investments (*e.g.*, $23 billion) than Athene).

[19] *Compare* AC ¶ 72, *with* Ex. F, MetLife 10-K at 226, 228 (reporting use of modified coinsurance); Ex. E, Prudential 10-K at 168, 185, 271–72 (same); Ex. G, AIG 10-K at 22, 140, 153 (same).

[20] *Compare* Ex. C, Athene 10-K at 80–81, 108 (reporting RBC ratio of 416%), *with* Ex. F, MetLife 10-K at 15 (reporting RBC ratio of 380%); Ex. E, Prudential 10-K at 122 (reporting RBC ratio of 383%); *see also* Iowa Code § 521E.2–6 (requiring insurers to submit risk based capital reports to insurance regulators); N.Y. Ins. Law § 1322 (same); AC ¶ 92.

[21] Plaintiffs argue that NISA's evaluation of annuity providers was "consistent with the framework outlined in IB 95-1," AC ¶ 91. But the NISA report Plaintiffs cite in the Amended

omits reference to that report) frames Prudential as an imprudent choice, alleging Prudential engaged in some of the same practices—such as the significant use of Modified Coinsurance and obtaining reinsurance from Bermuda affiliates[22]—that Plaintiffs here claim rendered Athene a less safe choice. The *Dempsey* complaint also asserts additional problems with the choice of Prudential, including that the ultimate Prudential parent "has been systematically gutting reserves from its regulated insurance company subsidiaries, primarily PICA," Ex. H, *Dempsey* Compl. ¶ 70. That these allegations have been made in a public filing is, of course, judicially noticeable.[23] And, regardless of whether the Court credits the *Dempsey* plaintiffs' allegations for their truth, the fact that those plaintiffs and Plaintiffs here reached diametrically opposed conclusions regarding the safety of a prominent annuity provider illustrates the insufficiency of a pleading that criticizes a fiduciary's choice without addressing the merits (warts and all) of the other alternatives that were actually available to the fiduciary at the time.

### C. Plaintiffs Allege No Plausible Co-Fiduciary Liability Claim Against FCI.

In addition to their duty of loyalty and duty of prudence claims, Plaintiffs append to Count I, a claim that "each Defendant" has co-fiduciary liability for the other Defendants' selection of Athene. AC ¶ 144. That claim, however, makes no sense as to FCI because FCI was itself the fiduciary that selected Athene. *Id*. ¶ 22. Plaintiffs' co-fiduciary claim against FCI thus fails because they have not identified an underlying breach by another fiduciary. *See* GE's Motion at 19–22; *In re Bear Stearns Cos. Sec., Derivative, & ERISA Litig.*, 763 F. Supp. 2d 423, 580 (S.D.N.Y. 2011) ("claims for co-fiduciary liability require antecedent breaches of fiduciary

---

Complaint is clear that they did not apply IB-95's five factors but rather used the "bond market pricing of credit risk [as a] tool to evaluate potential annuity providers." Ex. I, Pension Risk Transfers May Be Transferring Risk to Beneficiaries at 9; AC ¶¶ 92–93; *see* n.3, *supra*.

[22] *Compare* AC ¶¶ 67–74, *with* Ex. H, *Dempsey* Compl. ¶¶ 53–58, 65–67, 82–83, 89, 99.

[23] *Rothman v. Gregor*, 220 F.3d 81, 92 (2d Cir. 2000).

duties by a co-fiduciar[y] to be viable"); *Bloom v. AllianceBernstein L.P.*, 725 F. Supp. 3d 325, 344 (S.D.N.Y. 2024) (same).

Yet, even if Plaintiffs had plausibly alleged a breach by the other Defendants, Plaintiffs' co-fiduciary liability claim would still fail as against FCI because they have failed to plead the other statutory requirements for co-fiduciary liability. AC ¶ 144. ERISA § 405(a)(1) and (a)(3) condition co-fiduciary liability not only on actual knowledge of another fiduciary's conduct, but also on an actual understanding that the conduct constitutes a breach. 29 U.S.C. § 1105(a)(1) ("knowing such act or omission is a breach"); *id.* § 1105(a)(3) ("knowledge of a breach"); *see also* H.R. Conf. Rep. No. 93-1280, reprinted in 1974 U.S.C.C.A.N. 5038, 5080 (fiduciary "must know that it was a breach"); *Renfro v. Unisys Corp.*, 671 F.3d 314, 324 (3d Cir. 2011) (same); *Donovan v. Cunningham*, 716 F.2d 1455, 1475 (5th Cir. 1983) (same). There are no factual allegations showing that FCI knew that any of the other Defendants' conduct was a breach. Any claim under ERISA § 405(a)(2), 29 U.S.C. § 1105(a)(2), also fails because that section, by its terms, only allows co-fiduciary liability where the defendant itself has breached a fiduciary duty, and, as discussed, Plaintiffs have failed to plausibly allege a breach by FCI. Plaintiffs' co-fiduciary claim should thus be dismissed as well.

## III. PLAINTIFFS' PROHIBITED TRANSACTION CLAIMS FAIL AS A MATTER OF LAW.

Count III asserts that the selection of Athene violated the prohibited transaction rules set forth in ERISA § 406(a), 29 U.S.C. § 1106(a) and ERISA § 406(b), 29 U.S.C. § 1106(b). The Amended Complaint, however, fails to allege a plausible claim under either provision.

### A. Plaintiffs Do Not State a Claim Under ERISA Section 406(a).

Plaintiffs' effort to assert a claim under ERISA § 406(a)(1) fails for two independent reasons. *First*, Plaintiffs' effort fails at the threshold because § 406(a) only applies to

transactions between plans and statutorily defined "parties in interest," and Plaintiffs do not

adequately allege that Athene fell within ERISA § 3(14)(B)'s definition of a "party in interest."

29 U.S.C. § 1002(14)(B).  While the Amended Complaint offers the conclusory assertion that

Athene "was a party in interest because it provided services to the Plan" (AC ¶ 153), it includes

no factual allegations to support that conclusion.  The only relationship between Athene and the

Plan that the Amended Complaint identifies at all is Athene's provision of annuity coverage to

former Plan participants by virtue of the very PRT that Plaintiffs challenge.  *See id*. ¶ 154; *see*

*also id*. ¶¶ 113–116.  But, as the Supreme Court has recognized, annuities are not services,

*NationsBank of N.C., N.A. v. Variable Annuity Life Ins. Co.*, 513 U.S. 251, 259 (1995)

("annuities are widely recognized as . . . investment products" rather than services), and thus

providing annuities or other insurance coverages does not render an insurer an ERISA party in

interest.  *Marshall v. Carroll*, 1980 U.S. Dist. LEXIS 17767, at *27 (N.D. Cal. Apr. 18, 1980)

("[T]he fact that an insurance company provides insurance to a plan does not transform it into a

party in interest within the meaning of [ERISA §3(14)(B)]."), *aff'd sub nom. Donovan v.*

*Carroll*, 673 F.2d 1337 (9th Cir. 1982)); DOL Adv. Opinion Ltr. No. 76-36, 1976 WL 5051, at

*1 (Jan. 15, 1976) (distinguishing insurance and the provision of services and stating that "the

sale by an insurance company of a group insurance policy to an employer to fund an employee

benefit plan would not alone cause the insurance company to become a party in interest to the

plan").

Moreover, even if the provision of annuity coverage qualified as a "service" (rather than

the sale of a financial product), Athene naturally did not begin providing annuity coverage to the

Plan until *after* it was selected and contracted to do so.  Thus, Athene would still not have been a

party in interest as of the time of the challenged transaction.  29 U.S.C. § 1002(14)(B); *D.L.*

22

*Markham DDS, MSD, Inc. 401(k) Plan v. Variable Annuity Life Ins. Co.*, 88 F.4th 602, 610 (5th Cir. 2023) (explaining that the phrase "a person providing services to such plan" under § 3(14)(B) refers to "a person who is *currently* providing services," not "future service providers") (emphasis in original); *Ramos v. Banner Health*, 1 F.4th 769, 787 (10th Cir. 2021) ("some prior relationship must exist between the fiduciary and the service provider to make the provider a party in interest under § 1106").

*Second*, even if Plaintiffs had adequately alleged a transaction falling within the scope of § 406(a) (they have not), Count III would still fail because the Amended Complaint offers no basis for negating the applicability of several exemptions to the prohibited transaction rules. In particular, the DOL's Prohibited Transaction Exemption 84-24 ("PTE 84-24") explicitly permits transactions like this one involving "[t]he purchase, with plan assets, of an insurance or annuity contract from an insurance company," so long as no more than "reasonable compensation" is paid. 71 Fed. Reg. 5887, 5889 (Feb. 3, 2006). Under the Second Circuit's decision in *Cunningham v. Cornell Univ.*, a plaintiff is required to plead that this exception does not apply to avoid dismissal. 86 F.4th 961, 975 (2d Cir. 2023), *cert. granted*, 145 S. Ct. 118 (2024). Plaintiffs' allegations do not meet that requirement. To be sure, Plaintiffs make the conclusory assertion that Athene received more than reasonable compensation. AC ¶ 154. But, as noted earlier, they not only fail to offer factual allegations supporting that conclusion, the allegations they do make—that Athene's pricing was "more favorable to GE than that of traditional annuity providers" and that Athene was "the lowest-cost candidate"—actually contradict that conclusion. *Id*. ¶¶ 122, 124; *Haley v. Tchrs. Ins. & Annuity Ass'n of Am.*, 2021 WL 4481598, at *5 (S.D.N.Y. Sept. 30, 2021) (compensation is reasonable for purposes of prohibited transaction exemption where it is "lower than or comparable to" what other providers charge for similar products or

23

services); *Tracey v. Mass. Inst. of Tech.*, 404 F. Supp. 3d 356, 364 (D. Mass. 2019) (same). Having failed to allege the unavailability of this and other applicable exemptions,[24] Plaintiffs have failed to adequately allege a claim under ERISA § 406(a).

**B.    Plaintiffs Do Not State a Self-Dealing Claim Under ERISA § 406(b) Either.**

Plaintiffs' claims under ERISA § 406(b)(1) and (b)(2) are likewise deficient.  PTE 84-24 provides an exemption from § 406(b) just as it does from § 406(a), and Plaintiffs' failure to allege the unavailability of that and other exemptions thus dooms these claims as well.

That, however, is not the only fatal infirmity in Plaintiffs' § 406(b) claims.  Turning first to ERISA § 406(b)(1), that provision prohibits a fiduciary from "deal[ing] with the assets of the plan in his own interest or for his own account." 29 U.S.C. § 1106(b)(1).  Plaintiffs, in other words, must allege *self-dealing*.  *In re Fid. ERISA Float Litig.*, 829 F.3d 55, 61 (1st Cir. 2016) (ERISA § 406(b) is a "prohibition against self-dealing").  As discussed above, the Amended Complaint offers no non-speculative allegations of self-dealing on the part of FCI.  *Supra* 11–14.

Plaintiffs' § 406(b)(2) claim against FCI, in turn, simply makes no sense.  That section bars fiduciaries from representing both the Plan and a counterparty to the Plan in a transaction and from acting "on behalf of a party (or represent[ing] a party) whose interests are adverse to the interests of the plan or the interests of its participants." 29 U.S.C. § 1106(b)(2).  To state a § 406(b)(2) claim, Plaintiffs must allege that the "relationship between the fiduciary and the adverse party has been more than a secret loyalty to the adverse party, but rather, has consisted

---

[24] If Plaintiffs were correct that annuity coverage is a "service" capable of rendering Athene a party in interest at the time of the PRT, additional exemptions would apply, including ERISA § 408(b)(17), 29 U.S.C. § 1108(b)(17).  Similar to PTE 84-24, the key condition for that exemption is that the Plan does not pay more than "adequate consideration."  As explained, far from raising doubts about that condition, Plaintiffs' allegations—if credited—establish that Athene's compensation was no more than reasonable and the Plan received no less, nor paid no more, than adequate consideration.

24

of a formal employer-employee or agency-type relationship."[25]  That is, Plaintiffs must plead

that FCI owed duties to two adverse masters such that it *could not* loyally serve both.  1974

U.S.C.C.A.N. at 5089 (stating that purpose of § 406(b)(2) is to prevent "a fiduciary from being

put in a position where he has dual loyalties, and, therefore, he *cannot* act exclusively for the

benefit of a plan's participants and beneficiaries").  But Plaintiffs do not allege FCI owed duties

to anyone but the Plan.  Moreover, for § 406(b)(2) to apply, the transaction must be *between* the

plan and the party with adverse interests.  *Amato v. W. Union Int'l, Inc.*, 773 F.2d 1402, 1417 (2d

Cir. 1985); *Donovan*, 680 F.2d at 270.  While Plaintiffs allege that GE had adverse interests, AC

¶ 155, the Amended Complaint does not and cannot allege the PRT was a transaction *between*

the Plan and GE.

## C.    Plaintiffs' Non-Fiduciary Liability and Monitoring Claims Make No Sense As Against FCI.

Although Plaintiffs assert their claims for non-fiduciary liability in Counts II–III and their

monitoring claim in Count IV against all Defendants, those claims have no traction when it

comes to FCI.  FCI was a fiduciary with respect to the selection of Athene, AC ¶ 22, and

Plaintiffs do not allege that it was a non-fiduciary as to any other alleged fiduciary breach.

Count IV, in turn, alleges a failure by Defendants to monitor the fiduciaries they appointed, but

the Amended Complaint does not allege that FCI appointed any fiduciaries at all.  *Id.* ¶¶ 159–62.

## CONCLUSION

For the foregoing reasons, FCI respectfully requests that the Court grant its motion and

dismiss the Amended Complaint in its entirety.

---

[25] *Tibble v. Edison Int'l*, 639 F. Supp. 2d 1074, 1094 (C.D. Cal. 2009), *aff'd*, 711 F.3d 1061 (9th Cir. 2013), *and aff'd*, 729 F.3d 1110 (9th Cir. 2013), *and aff'd*, 820 F.3d 1041 (9th Cir. 2016); *see also Innis v. Bankers Tr. Co. of S.D.*, 2017 WL 4876240, at *8 (S.D. Iowa Oct. 13, 2017) (dismissing § 406(b)(2) claim because there was no allegation that defendant "stood on both sides of the [T]ransaction").

Dated: February 19, 2025

Respectfully submitted,

/s/ *William D. Pollak*

William D. Pollak (NDNY Bar No. 705980)

O'MELVENY & MYERS LLP
1301 Avenue of the Americas
New York, NY 10019
Tel: (212) 326–2000
Fax: (212) 326–2061
wpollak@omm.com

Shannon M. Barrett (*pro hac vice* pending)
Meaghan VerGow (*pro hac vice* pending)
Brian D. Boyle (*pro hac vice* forthcoming)
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 20006–4001
Tel: (202) 383–5300
Fax: (202) 383–5414
sbarrett@omm.com
mvergow@omm.com
bboyle@omm.com

*Counsel for Fiduciary Counselors Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY the foregoing document was filed with the Clerk of the Court using CM/ECF on this 19th day of February, 2025, and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

*/s/    William D. Pollak*
William D. Pollak
