UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

JULIE BUENO, individually and as representative on
behalf of a class of similarly situated persons;
DARLENE HOLLINS, individually and as
representative on behalf of a class of similarly situated persons;
and DAVID BUENO, individually and as
representative on behalf of a class of similarly
situated persons,

                            Plaintiffs,

v.                                                            1:24-CV-0822
                                                              (GTS/DJS)
GENERAL ELECTRIC COMPANY; THE BOARD
OF DIRECTORS OF GENERAL ELECTRIC
COMPANY; H. LAWRENCE CULP, JR.;
THE GENERAL ELECTRIC COMPANY PENSION
BOARD; THE COMMITTEE; JOHN DOES 1-5; and
FIDUCIARY COUNSELORS, INC.,

                            Defendants.

_____

APPEARANCES:                                OF COUNSEL:

SCHLICHTER BOGARD LLC                        ANDREW D. SCHLICHTER, ESQ.
   Counsel for Plaintiffs                    JEROME J. SCHLICHTER, ESQ.
100 South 4th Street, Suite 1200             KURT C. STRUCKHOFF, ESQ.
St. Louis, MO 63102                          PATRICK R. KUTZ, ESQ.
                                             SEAN E. SOYARS, ESQ.


GOODWIN PROCTOR LLP                          ALISON V. DOUGLAS, ESQ.
   Counsel for GE Defendants                 BENJAMIN REILLY, ESQ.
100 Northern Avenue                          JAMES O. FLECKNER, ESQ.
Boston, MA 02210

1900 North Street, N.W.                      ISABEL M. MARIN, ESQ.
Washington, D.C. 20036                       JAIME SANTOS, ESQ.

620 Eighth Avenue                            ALLISON J. SCHOENTHAL, ESQ.
New York, NY 10018

O'MELVENY & MEYERS LLP                    MEAGHAN MCLAINE VERGOW, ESQ.
  Counsel for Defendant Fiduciary Counselors    SHANNON BARRETT, ESQ.
1625 Eye Street, N.W.
Washington, D.C. 20006

1301 Avenue of the Americas, Suite 1700    WILLIAM POLLAK, ESW.
New York, NY 10019

SEYFARTH SHAW LLP                         ADA W. DOLPH, ESQ.
  Counsel for Amicus ERISA Industry Comm.   THOMAS M. HORAN, ESQ.
233 South Wacker Drive, Suite 8000        ROBERT T. SZYBA, ESQ.
Chicago, IL 60606-6448

OFFICE OF NORMAN P. STEIN                  NORMAN P. STEIN, ESQ.
  Counsel for Amicus Pension Rights Center
4542 NE 94th Street
Seattle, WA 98115-3933

GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

Currently before the Court, in this action filed pursuant to the Employee Retirement Income and Security Act ("ERISA") by Julie Bueno, Darlene Hollins, and David Bueno on behalf of themselves and as representatives of a class of similarly situated persons ("Plaintiffs") against General Electric Company, The Board of Directors of the General Electric Company, H. Lawrence Culp, Jr., the General Electric Company Pension Board, the Committee (the "GE Defendants"), Fiduciary Counselors, Inc. ("Defendant FCI"), and John Does 1-5, are the following motions: (1) the GE Defendants' motion to dismiss Plaintiffs' Amended Complaint for lack of subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), and for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6); and (2) Defendant FCI's motion to dismiss Plaintiffs' Amended Complaint for lack of subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), and for failure to state a claim upon which relief can be

2

granted pursuant to Fed. R. Civ. P. 12(b)(6).  (Dkt. Nos. 69, 70.)  Additionally, with leave from the Court, *amicus curae* briefs were filed by the ERISA Industry Committee and the Pension Rights Center.  (Dkt. Nos. 78, 92.)  For the reasons set forth below, Defendants' motions are granted, and Plaintiffs' Amended Complaint is dismissed without prejudice for lack of subject-matter jurisdiction.

## I.    RELEVANT BACKGROUND

### A.    Plaintiffs' Amended Complaint

Plaintiffs filed their initial Complaint on June 28, 2024.  (Dkt. No. 1.)  The GE Defendants filed a motion to dismiss that Complaint on September 27, 2024.  (Dkt. No. 46.)  However, on December 6, 2024, Plaintiffs filed a letter informing the Court that it intended to file an Amended Complaint with the written consent of the GE Defendants and requested that the then-pending motion to dismiss be denied as moot.  (Dkt. No. 55.)  Plaintiffs then did file that Amended Complaint on the same day (which, in addition to other changes, named Defendant FCI as a defendant in this case) and, on December 9, 2024, the Court denied the then-pending motion to dismiss without prejudice and recognized that the Amended Complaint superseded the original Complaint in all respects.  (Dkt. No. 58.)  The Amended Complaint is therefore the operative complaint here.

Generally, in Plaintiffs' Amended Complaint, they assert the following claims related to the named Plaintiffs and a class of similarly situated persons: (1) a claim that all Defendants breached their fiduciary duties under ERISA by selecting Athene as the annuity provider related to the partial pension risk transfer ("PRT") of Plaintiffs' interests in the GE defined-benefit pension because Athene was not the safest annuity choice available and was not the choice that

would best promote the interests of the Plaintiffs and other transferees; (2) a claim that any

Defendants who did not act as fiduciaries with respect to the selection of Athene still knowingly

participated in ERISA violations by the fiduciaries in violation of 29 U.S.C. §§ 1132(a)(3) and

1132(a)(9); (3) a claim that Defendants engaged in transactions prohibited by 29 U.S.C. §

1106(a) and (b); and (4) a claim that Defendants breached their fiduciary duties by failing to

monitor other fiduciaries that were appointed or hired to manage the relevant plan assets.  (Dkt.

No. 56.)

### B.    Parties Briefing on the Defendants' Motions to Dismiss

### 1.    GE Defendants' Memorandum of Law

Generally, in their motion to dismiss, the GE Defendants make four arguments.  (Dkt.

No. 69, Attach. 1.)  First, the GE Defendants argue that Plaintiffs lack standing to assert their

claims because they have failed to allege facts plausibly suggesting any injury-in-fact.  (*Id.* at 16-

27.)  Specifically, the GE Defendants argue that (a) the Supreme Court's decision in *Thole v.*

*U.S. Bank N.A.*, 590 U.S. 538 (2020), forecloses standing in this case because they have not

alleged, and cannot allege, that their fixed benefit payments under the annuity have been

interrupted in a manner that has deprived them of any amount to which they are entitled, which is

the only way in which they can show Article III standing given that beneficiaries of a defined-

benefit plan have no equitable or property interest in the assets of the plan itself, only the amount

of the vested benefits that they are entitled to receive; (b) Plaintiffs cannot establish Article III

standing by quantifying the present market value of an Athene annuity as a whole because,

again, Plaintiffs have no interest in the total value of the plan assets, only in the fixed amounts

they are entitled to receive; and (c) Plaintiffs acknowledge that they have received the full

4

amount of all payments under the annuity to this point and have not alleged that there is any certainly impending risk that Athene will default on its obligation to pay the annuity, especially given that they have acknowledged the existence of multiple layers of protections that would need to fail before there would even be a chance of Plaintiffs' benefits payments being affected. (*Id.*)

Second, the GE Defendants argue that Plaintiffs have not pleaded any viable claim against them regarding the selection of Athene because that decision was made by Defendant FCI, and Plaintiffs have not alleged any non-conclusory facts to plausibly suggest that the GE Defendants were knowing participants in any alleged fiduciary breach by Defendant FCI related to the selection of Athene. (*Id.* at 27-32.) The GE Defendants also argue that there can be no fiduciary breach claim arising from their decision to transfer the relevant defined-benefit pension obligations to an annuity because that decision is not a fiduciary action covered under ERISA and is, in fact, explicitly permitted by ERISA. (*Id.* at 28-29.)

Third, the GE Defendants argue that Plaintiffs also lack statutory standing to sue under 29 U.S.C. §§ 1132(a)(2) and 1132(a)(3), because they are not "participants" or "beneficiaries" under the meaning of ERISA given that the defined-benefit plan was terminated by the transfer to the annuity, and they cannot allege that they may become eligible to receive a benefit because this suit does not involve any claim for "benefits." (*Id.* at 32-33.)

Fourth, the GE Defendants argue that Plaintiffs' claims against Defendant Culp should be dismissed for all of the same reasons and because Plaintiffs have not alleged facts related to the involvement of Defendant Culp specifically in any of the actions underlying the claims. (*Id.* at 33.)

### 2.     Defendant FCI's Memorandum of Law

Generally, in its motion to dismiss, Defendant FCI makes three arguments.  (Dkt. No. 70, Attach. 1.)  First, Defendant FCI argues, as the GE Defendants have, that Plaintiffs have not alleged facts to plausibly suggest the existence of Article III standing for the following reasons: (a) they have not alleged any present impairment to their pension benefits given that they do not allege that they have failed to receive the monthly amount to which they are entitled; (b) their assertion that Athene may someday become unable to pay their promised benefits is too speculative to give rise to an imminent, concrete harm, especially given that the money transferred as part of the PRT transaction was placed into a separate account that is shielded from Athene's general creditors and Athene is subject to regulations and oversight intended to ensure an appropriate level of risk; (c) they cannot establish injury by alleging that the choice of Athene has lowered the market value of their pension benefits because those benefits are not themselves marketable; and (d) the claimed loss of ERISA protections does not cause any legally cognizable injury both because ERISA explicitly permits PRT transactions and because a settlor's choice to engage in a PRT is not a fiduciary decision covered by ERISA's protections.  (*Id.* at 12-19.)

Second, Defendant FCI argues that Plaintiffs have failed to plausibly allege that it breached its fiduciary duties in selecting Athene as the annuity provider for the PRT.  (*Id.* at 19-29.)  Specifically, Defendant FCI argues as follows: (a) Plaintiffs have not adequately alleged that Defendant FCI acted disloyally because their assertion of disloyalty is based on mere speculation that Defendant FCI made a decision favorable to the GE Defendants with the hope that the GE Defendants would again retain them for future matters, and the fact that Athene might have charged lower premiums than other applicants to supply the annuity (which could

6

incidentally benefit the GE Defendants) does not establish disloyalty by the fiduciary; (b) Plaintiffs have not adequately alleged that Defendant FCI acted imprudently because they have provided no pertinent allegations regarding the process Defendant FCI used to make its selection of Athene, much less identified any deficiencies in that process or clearly more prudent alternatives that would plausibly suggest a lack of prudence; and (c) Plaintiffs have not alleged, and cannot allege, facts plausibly suggesting any co-fiduciary claim against Defendant FCI because it was the fiduciary that selected Athene and they have not identified any breach of duty by any other fiduciary, much less that Defendant FCI had any knowledge of any breach of duty by such other unidentified fiduciary. (*Id.*)

Third, Defendant FCI argues that Plaintiff's prohibited-transactions claims fail as a matter of law. (*Id.* at 29-33.) Specifically, Defendant FCI argues as follows: (a) Plaintiffs have not stated a claim under Section 406(a) because they have not adequately alleged that Athene is a "party in interest" and several exemptions to the prohibited transaction rule apply to the PRT; (b) Plaintiffs also have not stated a claim under Section 406(b) because, again, they have not adequately alleged why certain exemptions do not apply and have not alleged any self-dealing conduct or duties that would satisfy the requirements of such a claim; and (c) Plaintiffs cannot state a claim for non-fiduciary duty or failure to monitor fiduciaries because Defendant FCI was itself the fiduciary here. (*Id.*)

### 3. Plaintiffs' Consolidated Opposition Memorandum of Law

Generally, in their consolidated opposition memorandum of law related to both motions to dismiss, Plaintiffs make six arguments. (Dkt. No. 84.) First, Plaintiffs argue that the Court should disregard the extrinsic evidence presented by Defendants because they have raised only

7

facial challenges to Plaintiffs' standing in this action and therefore the Court must accept

Plaintiffs' allegations in the Amended Complaint as true and may not consider evidence from

outside the four corners of the complaint unless appropriate under the applicable standard. (*Id.* at

12-15.)

Second, Plaintiffs argue that they have alleged facts sufficient to establish the existence

of standing. (*Id.* at 15-34.) Specifically, Plaintiffs argue as follows: (a) they have alleged harms

traditionally recognized in American courts including the reduction in the value of their benefits

(likening the promise of their benefits to a contractual right), the violation of their right to be free

from fiduciary misconduct (which does not require an economic loss to pursue, but merely that

the fiduciary profited from the misconduct), and the creation of a substantial risk that Athene

would default on its annuity obligations in the future; and (b) the fact that Congress permitted

plan beneficiaries to seek forward-looking relief shows that their claims here meets the Article

III standing requirement because Congress provided an enforceable legal statutory right in that

respect, the deprivation of which (through breach of fiduciary duty in the selection of a risky

annuity provider such as Athene) establishes Article III standing. (*Id.*)

Third, Plaintiffs argue that they have alleged facts to plausibly suggest that Defendants

breached their fiduciary duties. (*Id.* at 34-46.) Specifically, Plaintiffs argue as follows: (a) GE

acted as a fiduciary in the selection of Athene because it chose to purchase (and indeed did

purchase) the annuities from Athene; (b) both GE and Defendant FCI breached their co-fiduciary

duties in that GE had knowledge of and enabled Defendant FCI's breach of its duties, while

Defendant FCI facilitated the purchase of the annuity with knowledge that the transaction

breached GE's fiduciary duties; (c) they have statutory standing because Congress specifically

authorized individuals whose pension benefits were transferred to an annuity to sue for ERISA violations related to that transfer, and, regardless of whether Plaintiffs have statutory standing under Sections 1132(a)(2) or 1132(a)(3), there is no doubt that they have statutory standing under Section 1132(a)(9); and (d) they have alleged facts to plausibly suggest that Defendant FCI breached its fiduciary duties of loyalty and prudence in that (i) it engaged in both self-dealing and placing the interests of GE over those of the plan beneficiaries, and (ii) it failed to adhere to its duty to choose the safest available annuity, and the evidence Defendant FCI provides in an effort to sway the Court to a contrary conclusion cannot be considered on these motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  (*Id.*)

Fourth, Plaintiffs argue that they have plausibly alleged that the GE Defendants are also liable for non-fiduciary conduct by knowingly participating in Defendant FCI's fiduciary breach because they have alleged that GE knew or should have known that Athene was not sufficiently reliable and that Defendant FCI's investigation and process were flawed but nevertheless executed the transaction for its own gain.  (*Id.* at 46-48.)

Fifth, Plaintiffs argue that they have plausibly alleged that Defendants engaged in prohibited transactions because (a) Athene meets the definition of a party in interest under ERISA because it provided services for the Plan, (b) it is Defendants' burden rather than Plaintiffs' to plead that an exemption applies, and (c) they have alleged a violation that fits within Section 1106(b).  (*Id.* at 48-49.)

Sixth, Plaintiffs argue that they have plausibly alleged that the GE Defendants breached their duty to monitor the actions of their fiduciary, Defendant FCI, and therefore to the extent

that any claim of breach of fiduciary duty has been properly pleaded, this claim must also survive dismissal.  (*Id.* at 48.)

### 4.    GE Defendants' Reply Memorandum of Law

Generally, in reply, the GE Defendants make three arguments.  (Dkt. No. 89.)  First, the GE Defendants argue that Plaintiffs have not sufficiently alleged that they suffered any injury-in-fact to establish standing.  (*Id.* at 6-17.)  Specifically, the GE Defendants argue as follows: (a) Plaintiffs' theory that the value of their benefits were diminished by being transferred from GE to Athene is foreclosed by *Thole* in that they possess no equitable or property interest in the total value of the plan, but rather only an equitable or property interest in the specific benefits to which they are entitled, and there is no injury to any "contract-like" interest so long as they continue to receive the payments they are guaranteed, regardless of the source of the payment; (b) Plaintiffs' assertion that allegations of a breach of fiduciary duty is itself sufficient to establish standing is inaccurate because, here, Plaintiffs' entitlement to a specific amount of benefits does not change according to how well the annuity is managed and they are still required to show some concrete injury; and (c) Plaintiffs have failed to allege that there is a certainly impending risk of default by Athene because they relied on an incorrect "substantially increased" legal standard related to what level of risk of future harm is sufficient to establish standing, and their allegations that they are at high risk of not receiving the full amount of their promised pension is based on a highly attenuated chain of possibilities that is insufficient to amount to a concrete or imminent injury, particularly given that they offer no reason to suggest why there is a risk that the money set aside in the separate account to fund the annuity will not be available to pay their promised benefits.  (*Id.*)

10

Second, the GE Defendants argue that Plaintiffs have not stated any plausible claims against them.  (*Id.* at 17-20.)  Specifically, the GE Defendants argue the following: (a) all claims against Defendant Culp should be dismissed because Plaintiffs have not even attempted to justify them; (b) Plaintiffs' claims for breach of fiduciary duty must fail because it was Defendant FCI, not the GE Defendants, who made the selection of Athene, and Plaintiffs' argument that GE's signing of the GACs related to the transfer of the pension assets renders it a fiduciary are meritless given that those acts occurred after the selection of Athene by Defendant FCI and were merely to effectuate the PRT; and (c) Plaintiffs' claims for co-fiduciary or non-fiduciary liability also fail because Plaintiffs have alleged no facts to plausibly suggest that the GE Defendants knew of any breach of fiduciary duty by Defendant FCI, as does the claim for failure-to-monitor because Plaintiffs have not alleged facts to meet the requirements of that claim.  (*Id.*)

Third, the GE Defendants argue that Plaintiffs' lack statutory standing under Sections 1132(a)(2) and 1132(a)(3), noting that Plaintiffs have essentially conceded that the only basis for statutory standing is under Section 1132(a)(9) and thus they cannot pursue claims for disgorgement.  (*Id.* at 20).

## 5.    Defendant FCI's Reply Memorandum of Law

Generally, in reply, Defendant FCI makes four arguments.  (Dkt. No. 90.)  First, Defendant FCI argues that Plaintiffs have failed to allege facts sufficient to establish Article III standing.  (*Id.* at 8-14.)  Specifically, Defendant FCI argues as follows: (a) any alleged injuries incurred from being "ejected" from the Plan (i.e., having their defined-benefit pension transferred to an annuity) are not traceable to Defendant FCI's selection of Athene, but rather to the GE Defendants' non-fiduciary decision to pursue a PRT (which they were expressly

11

permitted to do under ERISA); (b) Plaintiffs' reliance on a standard of "substantially increased risk" related to allegations of future harm is incorrect, and the correct standard is that future harm must be "certainly impending" or there must be a "substantial risk" that the harm will occur; (c) Plaintiffs' assertion that they were injured by a diminishment in the value of their pension benefits is also flawed because, again, they have not alleged that the amount of their present or future benefits have changed as a result of the PRT or specifically the transfer to Athene; and (d) asserting a breach of fiduciary duty is not alone enough to show standing without an injury-in-fact, and, as to any disgorgement claim, Plaintiffs have not alleged any way in which Defendant FCI was enriched by the selection of Athene. (*Id.*)

Second, Defendant FCI argues that Plaintiffs have failed to allege that Defendant FCI has breached its fiduciary duties. (*Id.* at 14-18.) Specifically, Defendant FCI argues as follows: (a) Plaintiffs have not alleged that it acted disloyally because they merely speculate that Defendant FCI selected Athene for improper reasons without presenting any plausible factual allegations to support that speculation; (b) Plaintiffs have not alleged that it acted imprudently because they have failed to allege any facts regarding the process Defendant FCI engaged in related to the selection of Athene or about any of the competitors who had submitted bids for consideration; and (c) Plaintiffs cannot impose co-fiduciary liability on Defendant FCI because they have not plausibly alleged any breach of duty by any other fiduciary or that Defendant FCI knew about any such breaches by any co-fiduciary. (*Id.*)

Third, Defendant FCI argues that Plaintiffs' prohibited transaction claims also must fail as a matter of law. (*Id.* at 19-20.) Specifically, Defendant FCI argues as follows: (a) Plaintiffs fail to state a claim under Section 406(a) because they have not adequately alleged that Athene

12

was a "party in interest" at the time of the PRT given that providing an annuity is considered to

be a product rather than a service, and Athene additionally did not provide any coverage until

after its retention and thus could not have been a party in interest at the time of retention; (b)

Plaintiffs fail to state a claim for self-dealing under Section 406(b) because they do not allege

that Defendant FCI acted in its own interest (but rather in the interest of GE), and they do not

allege that Defendant FCI has the requisite type of relationship with the GE Defendants to

impose liability on them.  (*Id.*)

Fourth, Defendant FCI argues that Plaintiffs' other claims for non-fiduciary liability and

breach of duty to monitor other fiduciaries must also be dismissed because they have not

identified any breach of a fiduciary duty by any other fiduciary or explained how it breached a

duty to monitor any such other fiduciary.  (*Id.* at 20.)

### 6.    ERISA Industry Committee's *Amicus Curae* Brief

In its *amicus curae* brief, the ERISA Industry Committee makes the following five

arguments regarding the policy aspects of the use of PRT and insurance annuities as a method of

providing employee pensions: (1) there is no requirement that an employer establish an

employee pension plan, and ERISA explicitly permits an employer provider of a defined-benefit

plan to terminate that plan through a PRT; (2) insurance annuities are one of the acceptable ways

in which an employer can terminate its in-house pension obligations, and such arrangements are

generally more protective of a beneficiary's benefits than an employer-administered plan

because insurance companies are subject to stricter financial standards and oversight and, in fact,

insurance-backed annuity pensions have a lower failure rate than employer-administered pension

plans; (3) although Plaintiffs rely on an example of various insurer failures to argue that the

13

arrangement with Athene is risky, "no active issuer of annuity contracts with remaining annuity obligations has failed" since 2008, while at least 931 single-employer plans have failed in that time; (4) in place of protection by the Pension Benefit Guaranty Corporation ("PBGC"), insurer commitments are backed by various resources and oversight, including state regulators, rating agency reviews, the use of separate accounts, and state guaranty associations; and (5) the availability of PRT as an option for employers encourages them to establish pension plans for their employees by giving flexible options for certainty about future expenses in the face of economic volatility  (Dkt. No. 78, at 10-15.)

The ERISA Industry Committee also makes the following three arguments related specifically to Plaintiffs' claims in this action: (1) Plaintiffs have not pleaded a breach of fiduciary duty because their argument rests on a misinterpretation of Department of Labor Interpretative Bulletin 95-1 ("IB 95-1") as requiring the fiduciary to select the "safest annuity available," while IB 95-1 itself makes clear that the relevant fiduciary duties are focused on the process of selection rather than the end result, and accepting Plaintiffs' argument and interpretation would permit almost any beneficiaries whose benefits were subject to a PRT to file a similar lawsuit despite a lack of concrete harm; (2) Plaintiffs have not suffered any injury and thus have no standing because the annuity contract with Athene requires it to pay Plaintiffs the same benefits to which they would have been entitled under GE's defined-benefit plan and their suggestion that they may be harmed in the future is entirely speculative; and (3) the loss of PBGC backing does not cause injury because not only is the choice by an employer to engage in a PRT not a fiduciary decision (and thus there would be no causality to sustain Plaintiffs' claims), but data shows that the PBGC has not, in practice, guaranteed that a beneficiary will

14

receive their full amount of benefits in a way that would suggest loss of such protection constitutes a concrete injury.  (*Id.* at 15-19.)

### 7.    Pension Rights Center's *Amicus Curae* Brief

In its *amicus curae* brief, the Pension Rights Center provides some historical context regarding the enactment of ERISA, the use of annuities to fulfill pension obligations, and the circumstances leading to the promulgation of IB 95-1, and makes the following four arguments: (1) IB 95-1 does not support the interpretation made by Defendant FCI or indicate that cost can be a factor in choosing to purchase a less-safe annuity except in rare cases not present here; (2) Plaintiffs were injured by receiving an annuity with a higher risk of default than other available annuities because the risky annuity has less economic value that resulted in an immediate economic loss; (3) dismissal at this stage, before discovery, would preclude Plaintiffs from having any meaningful recourse if Athene does default in the future and encourages fiduciaries to choose lower-cost, more risky annuities for PRTs; and (4) Plaintiffs have alleged facts plausibly suggesting that Defendants failed to satisfy ERISA's fiduciary standards unrebutted by any clarifying information regarding the decision-making process used by Defendant FCI in selecting Athene, and Defendants cannot credibly argue that purchasing a lower-cost annuity represented a balancing of the interests of the beneficiaries whose pensions were transferred by the PRT and those who remained as part of GE's own internal defined-benefit plan.  (Dkt. No. 92.)

## II.    GOVERNING LEGAL STANDARDS

### A.    Legal Standards Governing a Motion to Dismiss Under Fed. R. Civ. P. 12(b)(1)

"It is a fundamental precept that federal courts are courts of limited jurisdiction." *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978).  Generally, "[a] case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000) (citing Fed. R. Civ. P. 12[b][1]).  "In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings." *Makarova*, 201 F.3d at 113 (citing *Kamen v. American Tel. & Tel. Co.*, 791 F.2d 1006, 1011 [2d Cir. 1986]).

More specifically, "[w]hen . . . a jurisdictional challenge under Fed. R. Civ. P. 12(b)(1) is addressed to the complaint, a court accepts as true all the factual allegations in the complaint and must draw all reasonable inferences in favor of the plaintiff." *Lunney v. U.S.*, 319 F.3d 550, 554 (2d Cir. 2003) (citing, *inter alia*, *Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton Coll.*, 128 F.3d 59, 63 [2d Cir. 1997]); *see also Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005) (stating that a district court may properly dismiss a case for lack of subject matter jurisdiction under Rule 12[b][1] only after "[c]onstruing all ambiguities and drawing all inferences" in a plaintiff's favor) (citing *Makarova*, 201 F.3d at 113).

However, when a defendant challenges the factual basis for the plaintiff's assertion of jurisdiction, "[j]urisdiction must be shown affirmatively, and that showing is not made [merely] by drawing from the pleadings inferences favorable to the party asserting it."  *Shipping Fin. Servs. Corp v. Drakos*, 140 F.3d 129, 131 (2d Cir.1998); *accord, APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003); *see also Robinson v. Gov't of Malaysia*, 269 F.3d 133, 140 (2d Cir. 2001) ("In a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), the defendant may challenge either

16

the legal or factual sufficiency of the plaintiff's assertion of jurisdiction, or both. . . . If the

defendant challenges only the legal sufficiency of the plaintiff's jurisdictional allegations . . . , the

court must take all facts alleged in the complaint as true and draw all reasonable inferences in

favor of plaintiff . . . .  But where evidence relevant to the jurisdictional question is before the

court, the district court . . . may refer to that evidence.") (internal quotation marks and citations

omitted).

In such a case, "[a] plaintiff asserting subject matter jurisdiction has the burden of

proving by a preponderance of the evidence that it exists." *Makarova*, 201 F.3d at 113 (citing

*Malik v. Meissner*, 82 F.3d 560, 562 [2d Cir. 1996]); *see also Lunney v. United States*, 319 F.3d

550, 554 (2d Cir. 2003) ("Plaintiffs bear the burden of showing by a preponderance of the

evidence that subject matter jurisdiction exists.") (internal quotation marks omitted).

**B.**    **Legal Standards Governing a Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6)**

It has long been understood that a dismissal for failure to state a claim upon which relief

can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds:

(1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a

challenge to the legal cognizability of the claim.  *Jackson v. Onondaga Cty.*, 549 F. Supp.2d 204,

211 nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J.) (adopting Report-Recommendation on *de novo*

review).

Because such dismissals are often based on the first ground, some elaboration regarding

that ground is appropriate.  Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a

pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to

relief."  Fed. R. Civ. P. 8(a)(2) [emphasis added].  In the Court's view, this tension between

17

permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement

to relief is often at the heart of misunderstandings that occur regarding the pleading standard

established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain"

pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F.

Supp. 2d at 212 n.20 (citing Supreme Court case).  On the other hand, the Supreme Court has

held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ.

P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of

what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp. 2d at

212 n.17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of

"enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision

on the merits" by the court.  *Jackson*, 549 F. Supp. 2d at 212 n.18 (citing Supreme Court cases);

*Rusyniak v. Gensini,* 629 F. Supp. 2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing

Second Circuit cases).  For this reason, as one commentator has correctly observed, the "liberal"

notice pleading standard "has its limits."  2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d

ed. 2003).  For example, numerous Supreme Court and Second Circuit decisions exist holding

that a pleading has failed to meet the "liberal" notice pleading standard.  *Rusyniak,* 629 F. Supp.

2d at 213 n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129

S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an

appellate decision holding that a complaint had stated an actionable antitrust claim under 15

18

U.S.C. § 1. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 560-61, 577. Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id.* at 555-70. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id.* at 555. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id.*

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (internal quotation marks and citations omitted). However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id.*, it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556.

19

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal*, 129 S. Ct. at 1949 (internal citations and alterations omitted). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

Finally, a few words are appropriate regarding what documents are considered when a dismissal for failure to state a claim is contemplated. Generally, when contemplating a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c), the following matters outside the four corners of the complaint may be considered without triggering the standard governing a motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case.[1]

---

[1]      *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *L-7 Designs, Inc. v. Old Navy, LLC*, No. 10-573, 2011 WL 2135734, at *1 (2d Cir. June 1, 2011) (explaining that conversion from a motion to dismiss for failure to state a claim to a motion for summary judgment is not necessary under Fed. R. Civ. P. 12[d] if the "matters outside the pleadings" in consist of [1] documents attached to the complaint or answer, [2] documents incorporated by reference in the complaint (and provided by the parties), [3] documents that, although not incorporated by reference, are "integral" to the complaint, or [4] any matter of which the court can take judicial notice for the factual background of the case); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (explaining that a district court considering a dismissal pursuant to Fed. R. Civ. 12(b)(6) "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. . . . Where a document is not

## III.    ANALYSIS

After careful consideration of whether Plaintiffs' allegations are sufficient to establish Article III standing, the Court answers this question in the negative for reasons stated in the Defendants' memoranda of law.  *See, supra* Parts I.B.1, 2, 4, and 5 of this Decision and Order. To those reasons, the Court adds the following analysis (which is intended to supplement, and not supplant, Defendants' reasons).

"To establish standing under Article III of the Constitution, a plaintiff must demonstrate (1) that he or she suffered an injury in fact that is concrete, particularized, and actual or imminent, (2) that the injury was caused by the defendant, and (3) that the injury would likely be redressed by the requested judicial relief."  *Thole v. U.S. Bank N.A.*, 590 U.S. 538, 540 (2020). As to the first of these requirements, "[a]n injury in fact can be a physical injury, a monetary injury, an injury to one's property, or an injury to one's constitutional rights, to take just a few common examples."  *Food and Drug Admin. v. Alliance for Hippocratic Med.*, 602 U.S. 367,

---

incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint. . . . However, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document.  It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.") [internal quotation marks and citations omitted]; *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2009) ("The complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (internal quotation marks and citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir.1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint," the court may nevertheless take the document into consideration in deciding [a] defendant's motion to dismiss, without converting the proceeding to one for summary judgment.") (internal quotation marks and citation omitted).

381 (2024).  An injury must also be "actual or imminent, not speculative—meaning that the injury must have already occurred or be likely to occur soon."  *Alliance for Hippocratic Med.*, 602 U.S. at 381 (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 401 [2013]).  "Although imminence is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is *certainly* impending."  *Clapper*, 568 U.S. at 401 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 565 n.2 [1992]) (emphasis in original).  The Supreme Court has "repeatedly reiterated that 'threatened injury must be *certainly impending* to constitute injury in fact,' and that 'allegations of *possible* future injury' are not sufficient."  *Clapper*, 568 U.S. at 409 (quoting *Whitmore v. Arkansas*, 495 U.S. 149 [1990]) (emphasis in original).

Plaintiffs, in their opposition memorandum of law, raise three distinct ways in which they believe they have suffered an injury sufficient to confer Article III standing: (1) the act of transferring the pension plan benefits to the Athene annuity "reduced the value of Plaintiffs' promised benefits the moment it occurred"; (2) the transfer to the Athene annuity "invaded Plaintiffs' legal right to be free from breaches of fiduciary misconduct," which, by itself, represents a sufficient injury; and (3) the transfer to the Athene annuity "created a substantial risk that Plaintiffs will suffer future financial injury upon Athene's default."  (Dkt. No. 84, at 15.)  The Court will discuss each of these alleged injuries in turn.

### A.    Reduction in the Value of Plaintiffs' Promised Benefits

As to whether the PRT to the Athene annuity reduced the present value of Plaintiffs' benefits so as to create an immediate, concrete injury, the Court finds Plaintiffs' arguments unpersuasive.  As an initial matter, because there is some suggestion that Plaintiffs have argued

that *any* transfer via a PRT (not just to an Athene annuity specifically) reduced the value and caused injury because they lost the protections of ERISA and the PBGC, the Court finds that the mere action of engaging in a PRT does not cause a legally cognizable injury to establish standing for Plaintiffs' claims.  This is because, not only was the decision to engage in a PRT made by the GE Defendants as a settlor rather than a fiduciary (and thus the alleged harm did not come about as the result of a breach of fiduciary duty), but also any loss of ERISA protections as a result of a PRT cannot be considered to be a legal injury because ERISA explicitly permits employers to terminate their pension plans through a PRT.  *See* 29 U.S.C. § 1341(b)(3)(A) (indicating that, "[i]n connection with any final distribution of assets pursuant to the standard termination of the plan under this subsection, . . . the plan administrator shall . . . purchase irrevocable commitments from an insurer to provide all benefit liabilities under the plan"); *Beck v. PACE Intn'l Union*, 551 U.S. 96, 99 (2007) (noting that the "purchase of annuities" is "one statutorily specified method of plan termination" under ERISA).

As to Plaintiffs' more specific argument that the change from an ERISA-backed plan to an Athene annuity immediately diminished the value of their benefits, far from showing a "classic economic injury," Plaintiffs fail to explain how the value of their benefits was actually diminished.  There is no suggestion that the PRT, or the transfer to Athene specifically, resulted in them being entitled to or receiving any lesser amount of benefits than they were entitled to or receiving when those benefits were administered by the GE Defendants (or which they would have been entitled to or received from another, allegedly safer, annuity provider), and the cases they cite in support regarding loss of present value as an economic injury all involve materially distinguishable situations.  (Dkt. No. 84, at 16-17.)  Rather, their basis for a loss of value appears

23

to be premised on the fact that Athene is less "creditworthy," such that the Athene annuity

presents a higher risk of failure and there is an increased chance that they may not receive all

future benefit payments than if the pension funds had remained within GE's internal defined-

benefit plan (or were transferred to a different annuity provider).  In that respect, it is essentially

identical to their third argument related to a substantial risk of future injury, which will be

addressed below.[2]

---

[2]     For four reasons, the Court declines to adopt the reasoning of another court in a recent
report-recommendation in which that court found that the transfer of pension obligations into an
annuity with Athene constituted a concrete *present* injury to the plaintiffs because the change to
a less creditworthy source of payment created a substantially increased risk of default, which
itself represents an immediate present loss of value.  *Piercy v. AT&T Inc.*, 24-CV-10608, 2025
WL 2505660 (D. Mass. Aug. 29, 2025).

     First, that court relied on a theory of substantially increased risk based on dicta in *Thole*,
but this Court does not read that dicta (which was discussing in a hypothetical sense whether the
allegations in the complaint had met the "substantially increased risk" standard put forth by an
*amici*) as actually accepting the *amici*'s argument as a correct statement of the law; the Supreme
Court merely indicated that, even if they did consider that theory of standing (which had not
been raised by the plaintiffs themselves), it would nevertheless not be successful based on factual
insufficiency.  *Thole*, 590 U.S. at 546.

     Second, the *Piercy* court fails to cite any authority to substantiate that "substantially
increased risk" is a valid basis for a *present* injury specifically (particularly in the relevant
ERISA context).  Indeed, *Thole* never classifies any "substantially increased risk" as a present
injury specifically, and the cases cited in *Thole* in the relevant section discussing the *amici*'s
argument all involve *future* injuries that require a showing of an imminent and non-speculative
risk of the alleged harm actually occurring.  *Thole*, 590 U.S. at 546 (citing *Clapper*, 568 U.S. 414
n.5 [2013]; *Lee v. Verizon Commc'ns, Inc.*, 837 F.3d 523, 545-46 [5th Cir. 2016]; *David v.
Alphin*, 704 F.3d 327, 336-338 [4th Cir. 2013]).

     Third, the court relies in part on *Bussian v. RJR Nabisco, Inc.*, 223 F.3d 286 (5th Cir.
2000), but that case (a) was not addressing standing in the language cited by the court, but rather
the merits of the plaintiffs' claim for breach of fiduciary duty, and (b) merely states that purchase
of a less-creditworthy annuity could be considered the imposition of an uncompensated risk on
the annuitants, but in no way suggests that such risk represents a present injury based on
immediate loss of value as opposed to a potential future injury.  *Bussian*, 223 F.3d at 298.

     Fourth, in framing the injury as a present economic injury, the court in *Piercy* does not
appear to acknowledge the large body of case law related to future injury or explain why such
case law does not apply; indeed, the court appears to off-handedly reject any such notion that the
relevant injury is a future one as opposed to a present one, even when the plaintiffs themselves

Plaintiffs also attempt to liken the PRT transfer to the Athene annuity to a violation of a contractual right, but that argument is unpersuasive. (Dkt. No. 84, at 16-19.) As already discussed, the GE Defendants had a statutory right to engage in a PRT to terminate its ERISA pension obligations to the Plaintiffs, and thus there can be no valid argument that Plaintiffs had a guaranteed right to have their pensions remain with the GE Defendants or any other provider. Thus, Plaintiffs' arguments regarding the existence of (or analogy to) some sort of quasi-contractual rights related to the source of their pension benefits are unavailing.

Because Plaintiffs have not alleged facts plausibly suggesting that there has been any actual present loss of value of their benefits as a result of the PRT or the selection of Athene specifically, this first reason offered by Plaintiffs does not establish an injury that gives rise to Article III standing.

**B.     Invasion of Right to Be Free from Breach of Fiduciary Duty**

Plaintiff next argues that the fact that they have alleged a breach of fiduciary duty is, by itself, sufficient to establish an injury for the purposes of Article III standing. However, as with Plaintiffs' arguments regarding the first alleged injury, certain cases cited in support of their

---

attempt to frame the harm as a future injury, by stating that the standard is not whether the risk of Athene's collapse (and thus the inability to pay the annuity benefits) is "imminent" or "substantial," but rather whether there is a substantially increased risk of default when "compared with the risks associated with an annuity that a dutiful fiduciary should have properly selected." *Piercy*, 2025 WL 2505660, at *12. This assessment appears to contradict (or at the very least ignore) well-established law regarding constitutional standing in favor of a few sentences of dicta from *Thole* (which, again, this Court interprets in a different manner) and the court's own unsupported analogy to bond and security ratings, and suggests that the fact that the selection of Athene may have been more risky than other annuity providers is sufficient to cause a concrete constitutional harm because of some amorphous decrease in the creditworthiness of the provider of the annuity without any regard for how likely it is that the risk will actually result in a default or interruption of benefits. Because there appears to be no persuasive basis in the law for that conclusion, the Court declines to follow *Piercy's* reasoning.

assertion as a broad, general proposition are inapplicable or inapposite.  (Dkt. No. 84, at 21-22.)
For example, *Uzuegbunam v. Preczewski*, 592 U.S. 279 (2021), and the case which it
"approvingly cit[es]," relate not to whether breach of a common law right by itself affords
standing, but rather whether a plaintiff could pursue an action for a violation of a common law
right where only nominal, rather than actual, damages are available.  529 U.S. at 287-88 (citing
*Webb v. Portland Mfg. Co.*, 3 Sumn. 189 [Cir. Ct., D. Maine 1838]).  Further, *TransUnion LLC
v. Ramirez*, 594 U.S. 413 (2021), does not hold that a breach of fiduciary duty (or any other
cause of action) by itself imposes a concrete harm merely because it is a cause of action
traditionally recognized under common law; it in fact specifically notes that "this Court has
rejected the proposition that 'a plaintiff automatically satisfies the injury-in-fact requirement
whenever a statute grants a person a statutory right and purports to authorize that person to sue to
vindicate that right.'"  594 U.S. at 426 (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341
[2016]); *accord Thole*, 590 U.S. at 544.  The Supreme Court indicated that, when assessing
whether a concrete harm exists, the court "should assess whether the alleged *injury* to the
plaintiff has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a
lawsuit in American courts," *not* merely whether the alleged *cause of action* has traditionally
been recognized under American law.  *TransUnion*, 594 U.S. at 424-25 (quoting *Spokeo*, 578
U.S. at 341) (emphasis added).  *TranUnion* therefore supports a finding, contrary to Plaintiffs'
arguments, that standing can only exist where there is some concrete harm that occurs to a
plaintiff as a result of a breach of fiduciary duty (or any other claim).

   Indeed, contrary to the manner in which they frame their argument, Plaintiffs themselves
appear to acknowledge that the defendant must "profit" from the breach of fiduciary duties in

order to have standing, which "profit" could constitute a concrete harm under a constructive trust theory.  (Dkt. No. 84, at 21-22 ["Courts thus routinely hold that when a defendant profits by breaching its fiduciary duties, including under ERISA, the plaintiff suffers an injury-in-fact even if she has not realized a financial loss from the breach"].)  *See Thole*, 590 U.S. at 558-59 (Sotomayor, J., dissenting) (noting that, pursuant to the common law of trusts, "[a] beneficiary may sue a trustee for restitution or disgorgement, remedies that recognize the relevant harm as the trustee's wrongful gain," such that a claim for restitution can be brought where the trustee has been "unjustly enriched" by a breach of fiduciary duty and a claim for disgorgement can be brought to "strip the trustee of a wrongful gain"); *Microbot Med., Inc. v. Mona*, 19-CV-3782, 2024 WL 564176, at *6-7 (S.D.N.Y. Jan. 30, 2024) (noting that, "[t]o be clear, it is not the breach of fiduciary duty alone that equates to injury in fact," but rather there must be some profit to the fiduciary as a result of the breach to establish a sort of constructive trust the proceeds of which the plaintiff has been deprived).

The Court acknowledges that the majority in *Thole* found that trust law was not analogous to the situation in that case, which involved a defined-benefit pension still administered by the employer.  *Thole*, 590 U.S. at 542-43.  That finding, and the rationale of *Thole* in general, itself could constitute a basis for finding Plaintiffs lack standing as to their second argument.  *See id.* (rejecting plaintiffs' attempts to analyze trust law to their ERISA breach of fiduciary duty claim for the purposes of establishing an injury-in-fact because of the nature of a defined-benefit plan).  However, to the extent that the situation in *Thole* differs from the one presented here because it involved an internal defined-benefit plan rather than a PRT annuity and was based on breach related to mismanagement of the pension funds rather than

selection of an annuity provider, the Court has engaged in the constructive trust analysis out of an abundance of caution to demonstrate that even application of that analysis, if proper, would not provide any basis for standing here.

Plaintiffs here have not alleged that there was any benefit to Defendant FCI as the fiduciary related to the selection of Athene as the annuity provider. Instead, they allege that *the GE Defendants* received the benefit of that selection. (*See* Dkt. No. 56, at ¶ 4 ["Because the market devalues annuities when accounting for such risk, it is likely that GE saved a substantial amount of money from selecting Athene"]; ¶ 120 ["On information and belief, the choice of Athene conferred an economic benefit on GE in the form of reduced premium payments relative to the cost of a safe, established, and reputable insurance provider"]; ¶ 127 [noting additional ways in which the GE Defendants financially benefitted from the PRT].) The only apparent benefits Plaintiffs allege inured to Defendant FCI were (a) the fact that it was paid a fee for its services, and (b) the possibility that the GE Defendants would hire them in the future if they acted in the GE's Defendants' interests. (*See* Dkt. No. 56, at ¶ 124 ["Despite its self-proclaimed 'independence,' Fiduciary Counselors is a for-profit business. Thus, its revenue depends on repeat business from clients like GE. The market for retirement plan services is highly competitive, and employers like GE with billions of dollars under management have tremendous leverage over providers who wish to keep the business. . . . Given that Athene was a clearly inferior choice based on objective measures of relative safety, it is apparent that Fiduciary Counselors put the financial interest of GE and itself over those of retirees to whom it owed fiduciary duties"].) However, Plaintiffs do not allege that the GE Defendants have actually engaged in any additional business with Defendant FCI after the selection of Athene, and thus

28

there is no plausible suggestion that Defendant FCI received any benefit in that respect. Additionally, the fact that Defendant FCI received a contracted-for compensation for its fiduciary services does not constitute an improper financial gain, because there is nothing to plausibly suggest that there was any sort of agreement between the GE Defendants and Defendant FCI at any time before or after its being hired to act as fiduciary to select Athene, nor anything to plausibly suggest that Defendant FCI would not have been paid that same amount whether or not it selected Athene. Simply put, Plaintiffs have not provided any non-speculative allegations to plausibly suggest that Defendant FCI received some unjust or wrongful benefit as a result of the alleged breach of fiduciary duty that could constitute an injury to Plaintiffs under a constructive trust theory for the purposes of standing.

Although Plaintiffs appear to now argue that the GE Defendants were also fiduciaries as to the relevant transaction, that argument is belied by their own allegations in the Amended Complaint.[3] (*See* Dkt. No. 56, at ¶ 3 [noting that "an employer's decision to transfer pension obligations to an insurance company is considered a business decision not subject to fiduciary standards," while "the choice of an insurer is a fiduciary decision subject to ERISA's strict standards of prudence and loyalty"]; ¶¶ 22 and 114 [alleging that Defendant FCI 'was hired by

---

[3]    The Court notes that a district court possesses the discretion to decline to credit a factual assertion contained even in a plaintiff's affidavit when that factual assertion contradicts an allegation contained in the plaintiff's own prior complaint. *See Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*, 757 F.2d 523, 528-29 (2d Cir. 1985) ("A party's assertion of fact in a pleading is a judicial admission by which it normally is bound throughout the course of the proceeding. Accordingly, the district court properly disregarded Universal's affidavits seeking to controvert its own pleading."); *accord, Official Comm. of the Unsecured Creditors of Color Tile. Inc. v. Coopers & Lybrand. LLP*, 322 F.3d 147, 167 (2d Cir.2003) ("[A] party cannot contradict its own pleading with affidavits[.]").

the GE Defendants to act as the 'independent fiduciary' over the transaction at issue here"].)[4]
Although Plaintiffs do generically allege that "Defendants" were responsible for the selection of
Athene and provide allegations regarding a preexisting business relationship between the GE
Defendants and Athene's parent company, Apollo, they offer no non-conclusory allegations to
plausibly suggest that the GE Defendants were part of that selection process. Specifically,
although they insinuate that Defendant FCI did not really act independently despite being hired
as an independent fiduciary, their allegations are not only based entirely on speculation that
cannot suffice to meet the even the plausibility standard, but they also never go so far as to allege
that the GE Defendants directed or even encouraged Defendant FCI to select Athene, but rather
merely that Defendant FCI placed its own interests and the perceived interests of the GE
Defendants over those of the Plaintiffs. (Dkt. No. 56, at ¶ 124.) Plaintiffs therefore have not
plausibly alleged that the GE Defendants acted as a fiduciary related to the selection of Athene
(or any other relevant aspect of this case), and any improper benefits allegedly obtained by the
GE Defendants as a result of the breach of fiduciary duty do not constitute a basis for standing.

All that being said, the Second Circuit has noted that, "[i]n the ERISA context, we have
drawn a distinction between constitutional standing to seek injunctive relief and constitutional
standing to seek disgorgement." *Faber v. Metropolitan Life Ins. Co.*, 648 F.3d 98, 102 (2d Cir.
2011) (citing *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed*

---

[4]    Granted, the Court notes that Plaintiffs allege that the GE Defendants are fiduciaries
because they "exercised discretionary authority or discretionary control respecting management
of the Plan, exercised authority or control respecting management or disposition of the Plan's
assets, or had discretionary authority or discretionary responsibility in the administration of the
Plan"; however, given that Plaintiffs themselves acknowledge that the choice to engage in a PRT
is not a fiduciary action, none of the above factual allegations are applicable to the alleged
conduct underlying Plaintiffs' claim of a breach of fiduciary duty. (Dkt. No. 56, at ¶¶ 17-21.)

*Care, L.L.C.*, 433 F.3d 181, 199-200[2d Cir. 2005]).  A plaintiff can obtain injunctive relief related to a breach of ERISA's fiduciary duty requirements "'without a showing of individual harm,' whereas 'obtaining restitution or disgorgement under ERISA requires that a plaintiff satisfy the strictures of constitutional standing by demonstrating individual loss; to wit, that they have suffered an injury-in-fact.'"  *Faber*, 648 F.3d at 102 (quoting *Cent. States*, 433, F.3d at 199).  As to Plaintiffs' claims relating to disgorgement (which they do indeed seek as a remedy in their Amended Complaint), the Second Circuit has affirmatively stated that an individual harm or injury-in-fact must be shown to establish standing—a mere breach of the duty is not enough. That injury, of course, need not be monetary, but there must still be some individual harm apart from the fact of a breach of a common law duty.  As discussed above, Plaintiffs' allegations do not plausibly suggest any such individual harm, and thus there is no standing related to the disgorgement claims.  The Court also sees no reason why there should be any exception to the normal rule to provide a concrete harm as to the requests for other equitable relief such as declaratory judgment, posting of a security, or award of fees and interest.  *See Camire v. Alcoa USA Corp.*, 24-CV-1062, 2025 WL 947526, at *5 (D.D.C. Mar. 28, 2025) (rejecting a similar argument as that made here because *Thole* found that some concrete, individualized injury was required despite the equitable nature of the relief sought, and noting that, even if financial injury is not specifically required, there can be no standing where there is "no actual injury at all") (citing *Thole*, 590 U.S. at 544).[5]  While *Faber* appears to support a finding that Plaintiffs could

---

[5]      The Court notes that the situation presented in *Camire* was at least facially similar to the one here: the defendant employer hired FCI as an independent fiduciary, who selected Athene as the annuity provider for the defendant employer's PRT, and the plaintiffs allege that the defendant employer received an economic benefit as a result of that transaction.  *Camire*, 2025 WL 947526, at *2.

31

have standing to obtain *injunctive* relief through mere allegations of a breach of fiduciary duty,[6] Plaintiffs notably do not seek injunctive relief.  (Dkt. No. 56, at 55-56 [seeking declaratory judgment, disgorgement, posting of a security, certification of the proposed class, and an award of attorney's fees and costs and payment of interest].)  As a result, even if the law would permit a finding of standing related to injunctive relief here, that fact does not help Plaintiffs.

Because Plaintiffs have not alleged facts plausibly suggesting that there has been any concrete injury related to the alleged breach of fiduciary duty, this second reason offered by Plaintiffs also does not establish an injury that creates Article III standing.

### C.    Creation of Substantial Risk of Future Financial Injury

Lastly, Plaintiffs argue that they have established Article III standing based on their allegations that the purchase of the annuity through Athene substantially increased the risk that they will not receive the full amount of their guaranteed pension benefits.  However, as with the first two arguments, the Court finds this one also to be without merit.

As an initial matter, Plaintiffs appear to argue, as a corollary to their main argument, that Congress' implementation of certain amendments to ERISA through the Pension Annuitants Protection Act of 1994, in which Congress permitted individuals whose pension benefits had been transferred to an annuity via a PRT to sue to protect future benefits, creates standing here. (Dkt. No. 84, at 4, 6-7, 15-16.)  However, as Plaintiffs expressly acknowledge, that amendment

---

[6]    It is not clear whether *Thole* overrules this point of Second Circuit law, given that the Supreme Court there found no standing existed as to any aspect of the plaintiffs' case based on a failure to show a concrete injury, while noting that the plaintiffs had requested, along with other remedies, injunctive relief.  *Thole*, 590 U.S. at 541.  The Court need not decide that issue here because, as discussed above, Plaintiffs do not seek injunctive relief.

was enacted specifically to rectify the fact that the then-current ERISA did not consider beneficiaries of an annuity transferred via PRT to be "participants" and thus they had no legal remedy to sue for any misconduct related to that transaction, including to protect their ability to receive amounts yet to be provided.  (Dkt. No. 84, at 6-7.)  The fact that Congress created a new legal right, even to sue to protect future benefits, does not, however, negate the requirement to show an injury-in-fact in each specific case where a plaintiff sues under such provision. *TransUnion*, 594 U.S. at 426.  The fact that a plaintiff may have statutory standing does not automatically establish that they also have Article III standing.

As discussed above, to establish an injury-in-fact based on future harm that has not yet occurred, that harm must be "actual or imminent, not speculative—meaning that the injury must have already occurred or be likely to occur soon."  *Alliance for Hippocratic Med.*, 602 U.S. at 381 (citing *Clapper*, 568 U.S. at 401).  Indeed, the Supreme Court has indicated that the "threatened injury must be certainly impending to constitute an injury in fact."  *Clapper*, 568 U.S. at 409-10.  A theory of standing that "relies on a highly attenuated chain of possibilities, does not satisfy the requirement that threatened injury must be certainly impending."  *Id.* at 410. The Supreme Court has suggested that a future harm might be considered imminent also where there is a "'substantial risk' that the harm will occur," although it is not clear whether this is a different standard from the "certainly impending" standard or merely a different formulation of the same standard.  *Id.* at 414, n.5; *see also Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) ("An allegation of future injury may suffice if the threatened injury is 'certainly impending,' or there is a 'substantial risk that the harm will occur.'"); *TransUnion*, 594 U.S. at 435 (noting that "a person exposed to a risk of future harm may pursue forward-looking,

33

injunctive relief to prevent the harm from occurring, at least so long as the risk of harm is sufficiently imminent and substantial").

The Supreme Court did not appear to alter or expand this standard in *Thole*. In *Thole*, the Supreme Court noted that one of the plaintiffs' *amici* argued that standing would exist "if the mismanagement of the plan was so egregious that it substantially increased the risk that the plan and the employer would fail and be unable to pay the participants' future pension benefits," but it notably did not render any actual decision on whether that argument was or was not a correct statement of the law because the plaintiffs had not alleged any such theory of standing. *Thole*, 590 U.S. at 546. The Supreme Court did note, however, that the plaintiffs' complaint nevertheless did not plausibly allege facts that would meet that proffered standard. *Id.* This Court does not read the Supreme Court's offhand notation that it did not need to address the *amici*'s argument because there were no allegations that would indicate the plaintiffs would be successful under the proffered standard as an acceptance of the *amici*'s argument as an accurate statement of the law or as an alteration of the clearly stated legal standard for assessing future injury based on risk outlined in cases like *Clapper* and *Driehaus*. Because, as Defendants argue, there is a material difference between whether there is a "substantial risk" that a harm will occur and whether an action merely "substantially increased" the risk of harm, the Court finds that the proper legal standard to apply is whether the alleged future harm is either certainly impending or there is a substantial risk that such harm will occur.[7]

---

[7]     The Court notes that the court in *Camire* applied, based on D.C. Circuit precedent, an "increased risk of harm" standard, which requires a showing both that (1) there was a substantially increased risk of harm, and (2) there was a substantial probability of harm with that increase taken into account. *Camire*, 2025 WL 947526, at *7 (citing *Pub. Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.*, 489 F.3d 1279, 1295 [D.C. Cir. 2007]). Yet even under the D.C.

There can be little doubt that Plaintiffs allegations in the Amended Complaint would plausibly suggest that the risk of not receiving the full amount of their pensions in the future increased to some degree as a result of the selection of Athene. The pertinent question, however, is whether the risk of failure resulting from that selection can be considered to be a *substantial* risk.

Before answering that question, however, the Court must address whether it may consider the evidence Defendants have proffered along with their motions. Plaintiffs argue specifically as to Defendant FCI that the Court may not properly consider that evidence because Defendant FCI has raised only a facial challenge. (Dkt. No. 84, at 12-14.) It is true that Defendant FCI states within its section of legal boilerplate that it is raising a facial challenge to jurisdiction, and its arguments relying on the terms of the GACs related to the PRT primarily expand upon the facts alleged in the Amended Complaint and argue why they are insufficient rather than disputing those facts. (Dkt. No. 70, Attach. 1, at 12, 14-17.) Similarly, although the GE Defendants do not appear to specify whether they have intended to assert a facial or a factual challenge related to

---

Circuit's formulation, increased risk is not enough; a plaintiff must still allege a substantial probability of the harm occurring. Thus, under both the basic standard articulated by the Supreme Court and the increased risk standard articulated in *Camire*, a core requirement is whether a *substantial* risk of harm actually exists. The Court also notes that, although the Second Circuit has in some instances recognized an increased risk of harm theory for specific types of claims, but the relevant cases "announce no departure from the 'actual or imminent' standard." *Amnesty Intn'l USA v. Clapper*, 667 F.3d 163, 197 (2d Cir. 2011) (Livingston, J., dissenting); *see also McMorris v. Carlos Lopez & Assocs., LLC*, 995 F.3d 295, 300-01 (2d Cir. 2021) (noting a plaintiff can show harm from standing based on increased risk of identity theft or fraud following an unauthorized disclosure of data, which still requires consideration of factors bearing upon how great the likelihood is that the projected harm will actually manifest). Thus, even in cases where the harm has been framed as an "increased risk," it appears that a mere increase in risk is not enough, but rather the risk presented must be substantial to meet the requirements for standing.

their provision of extrinsic evidence (which was provided through links to an internet resource as opposed to as exhibits to their motion), the Court notes that they appear to use that evidence primarily to add additional factual allegations rather than dispute the allegations Plaintiffs have included in the Amended Complaint. (Dkt. No. 69, Attach. 1, at 16-27.) As a result, the Court generally agrees with Plaintiffs that Defendants have raised only a facial challenge (rather that a fact-based challenge), sufficient to generally preclude the Court from considering the extrinsic evidence related to the jurisdictional question. *See Harty v. West Point Realty, Inc.*, 28 F.4th 435, 441 (2d Cir. 2022) (noting that "[i]t is only where 'jurisdictional facts are placed in dispute' that the court has the 'obligations to decide issues of fact by reference to evidence outside the pleadings,'" and that "[w]hen the extrinsic evidence submitted by the parties does not controvert the material allegations of the complaint, it is not error for the district court to base its ruling solely on the allegations in the complaint") (quoting *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 [2d Cir. 2014]). However, to the extent that the evidence provided—particularly the GACs—actually contradict any of the material allegations in the Amended Complaint related to the jurisdictional questions here, the Court will consider such evidence. *See Harty*, 28 F.4th at 442 ("Where a party offers extrinsic evidence that contradicts the material allegations of the complaint, we have suggested that it would be error for the district court to disregard that extrinsic evidence.").

Here, as in *Camire*, Plaintiffs do include a number of allegations that would tend to suggest that Athene is more likely to fail than other identified insurance and annuity providers. But the mere fact that Athene is perhaps more risky than other provider does not suffice to show that there is a *substantial* risk that Athene will fail. *See Camire*, 2025 WL 947526, at *7 ("Put

simply, because Plaintiffs never allege that Athene is substantially likely to fail—just that it is at a greater risk of failure than its competitors—they have failed to establish standing on the basis of an increased risk of harm.").  However, those comparisons with other annuity providers are not the only allegations in the Amended Complaint that are relevant to the question of Athene's risk of failure.

Of note, Plaintiffs allege that "[t]oday, approximately 20% of Athene's portfolio is invested in risky asset-backed securities and leveraged loans, and approximately 80% of its PRT liabilities are reinsured through Bermuda-based affiliates owned by Athene's parent, Apollo,"  as well as that "Athene has a higher-than-average investment in collateral loan obligations (CLOS), and, as of September 30, 2023, approximately 35% of its $20.6 billion of CLOs was in one prominent market reporter's unfavorable BBB category."  (Dkt. No. 56, at ¶¶ 52, 55.)  Plaintiffs also allege that Athene's significant use of reinsurance and modified coinsurance, far from insulating Plaintiffs from any risk of Athene's failure, is part of the risk itself for the following reasons: (a) "[i]n Bermuda, capital requirements are lower, investment limitations are virtually non-existent, and transparency is minimal to zero"; (b) Bermuda reinsurers do not follow United States Statutory Accounting Principles, which lessens transparency regarding how much and what type of assets are backing the insurer, and Bermuda law also permits insurers to invest in assets that would not qualify as suitable under those Principles; (c) the reinsurance companies are captive affiliates of Athene rather than a third-party reinsurer; (d) use of modified coinsurance with the offshore reinsurers helps Athene obscure the actual risks associated with the assets involved and enables them to maintain a low level of surplus; and (e) because the reinsurers are captives affiliates of Athene, in the event of Athene having a liquidity crisis or shortfall, it would

be seeking payment from those captive affiliates, which are essentially itself.  (Dkt. No. 56, at ¶¶ 54, 68-74.)  They further allege that, at the end of 2023, "Athene's surplus-to-liability ratio was only 1.44%," which was the lowest surplus of almost any insurance carrier in the industry, while its total liabilities have increased more than 250% from 2018 to 2023.  (Dkt. No. 56, at ¶¶ 59-60, 62.)  They additionally allege that this low surplus substantially increases the risk of failure because Athene holds far more in risky assets than they have in surplus, and thus any conditions which would cause a "write-down" of those assets threaten to cause Athene to fail.  (Dkt. No. 56, at ¶¶ 63-65.)  Risk is also present because of Athene's increasing use of affiliated investments, an increase of 368% over five years.  (Dkt. No. 56, at ¶¶ 66.)  Moreover, Plaintiffs allege that, although Athene claims to have a separate account for the payment of the benefits related to the annuity purchased in the relevant PRT here, that account is "not truly 'ring-fenced' or insulated from Athene's general liabilities" because, according to GACs issued by Athene in similar PRT transactions, "assets in a given separate account may be used to support Athene's payment obligations under other separate GACs issued by Athene,"[8] and Athene "may also withdraw assets from the separate account and transfer them to the general account if the market value of the assets in the separate account exceeds Athene's liabilities under the GAC."  (Dkt. No. 56, at ¶ 77.)  Plaintiffs also allege that Athene's risk level has increased since 2016 when it ceased its life

---

[8]    The Court notes that the GAC relevant to the specific PRT in this case indicates that the amounts in the relevant separate account are held for "obligations under this Contract and the other contracts supported by the Separate Account."  (Dkt. No. 70, Attach. 3, at 9.)  The GAC notably defines the term "Separate Account" as the "Athene Group Annuity Commingled Separate Account," which "hold[s] assets supporting the payment obligations of Athene under this Contract[, and] may also support Athene's payment obligations under other separate account group annuity contracts issued by Athene."  (Dkt. No. 70, Attach. 3, at 6.)  The relevant GAC therefore generally aligns with Plaintiffs' allegations.

insurance business to focus on annuities, as such cessation has removed an important alternative avenue of business upholding its assets.  (Dkt. No. 56, at ¶ 79.)  Lastly, Plaintiffs include allegations from a 2022 report created by NISA Investment Advisors ("NISA") that "evaluated the creditworthiness of nine PRT providers, including Athene," in which it found that there was a 14% economic loss to beneficiaries due to credit risk in situations where Athene is chosen as the annuity provider.  (Dkt. No. 56, at ¶¶ 91-99.)  Plaintiffs allege that, per that report, "credit ratings correspond to insurers' likelihood of default"; it was noted that Athene has an "A+" credit rating from an unidentified source, as well as an "A" credit rating issued by Moody's Investor Service, Inc. ("Moody's"), and that an "A" rating represents a five-percent rate of default over a 20-year period.  (Dkt. No. 56, at ¶¶ 98-99.)

In addition to the above allegations, Plaintiffs also make a number of allegations that the Court finds do not contribute to any plausibility of their theory that Athene is at substantial risk of default on its obligations related to the PRT.  Specifically, Plaintiffs allege that nearly twenty-five percent of Apollo-owned companies have defaulted since 2022, but do not provide any factual allegations plausibly suggesting that those defaulting companies were businesses that offered insurance or annuities, much less that they were of a similar type and structure to Athene.  (Dkt. No. 56, at ¶ 53.)  Further, Plaintiffs provide allegations regarding a few recent examples of annuity providers that have been the subject of regulatory intervention related to similar business practices leading to financial instability.  (Dkt. No. 56, at ¶¶ 82.)  However, as Defendants note, these allegations do not speak to the ultimate harm that Plaintiffs allege (which is not merely the instability or eventual failure of Athene, but rather that they will not receive their promised annuity benefits in the future) given that, although Plaintiffs allege that regulators intervened and

took over such annuity providers in light of their deficiencies, they do not allege that those providers have actually defaulted on their obligations to pay annuitants since being placed in rehabilitation by regulators. (*See* Dkt. No. 56, at ¶ 84 [stating that Colombian Life and Colombian Mutual were placed into rehabilitation], ¶ 85 [PHL Variable was placed into rehabilitation "to protect policy holders and stabilize the company"].) Further, as to one of the examples provided that Plaintiffs do allege became insolvent, that entity was a Bermuda-based entity rather than one subject to U.S. regulatory oversight like Athene, and, again, Plaintiffs do not allege that the insolvency resulted in the inability or failure to pay on any annuity. (Dkt. No. 56, at ¶ 88.) As a result, these examples do not plausibly suggest that the circumstances identified by Plaintiffs related to Athene's situation create a substantial risk of default that will specifically render them unable to pay Plaintiffs' promised benefits pursuant to the annuity. Lastly, Plaintiffs allege that Athene has been the subject of investigation by insurance regulators in New York, but note that the investigation concluded only that Athene had violated New York law by transacting business in that state without a license; there is no indication that this investigation found any irregularities related to the practices of Athene in a way that would be relevant to their risk of default. (Dkt. No. 56, at ¶ 103.) These additional facts do not therefore plausibly suggest that Athene is at a substantial risk of defaulting on its obligations.

Based on the allegations in the Amended Complaint, including those specifically highlighted above, Plaintiffs have not alleged facts to plausibly suggest that Athene is at a substantial risk of defaulting on its obligation related to the annuity here in a manner that meets the imminence requirement. Although Plaintiffs identify a myriad of practices that might make Athene riskier than some other annuity providers, such fact does not make default a substantial

40

risk from a constitutional standpoint (which, as noted above, requires that the risk essentially be "certainly impending"). Although Plaintiffs allege that the fact that the funds from the PRT are housed in a separate account from Athene's general account does not represent a true insulation of those funds from Athene's general liabilities, the substance of its own allegations undermine that conclusion for two reasons. First, even if the separate account can also be used to pay obligations on other GACs that are supported by the separate account, such fact does not plausibly suggest that the funds in the separate account can be used to satisfy Athene's *general* liabilities. For instance, there is nothing to suggest Athene can simply use money from the separate account to pay liabilities related to its general account, but rather it can only use the separate account to pay liabilities related to the GACs supported by that separate account. Indeed, to the extent Plaintiffs have attempted to suggest otherwise, that would be disputed by the language of the GAC, which states that "[p]ursuant to Section 508A.1 of the Iowa Insurance Statutes, none of the assets allocated to the Separate Account, to the extent of reserve established in the Separate Account in respect of the payment obligations of Athene under this Contract and under the other group annuity contracts supported by the Separate Account, will be chargeable with liabilities arising out of any other business of Athene." (Dkt. No. 70, Attach. 3, at 8.) Second, Plaintiffs acknowledge that Athene may only withdraw money from the separate account and transfer it to the general account "if the market value of the assets in the separate account exceeds Athene's liability under the GAC." Athene therefore is not permitted to take money from the separate account in a manner that would leave it unable to pay its obligations under the GACs supported by that separate account.

Further, although Plaintiffs provide allegations regarding the fact that Athene's practices have left them with a low surplus that could mean default if any of their riskier investment assets are impacted by the market or other conditions, the alleged risk relies on pure speculation that such unfavorable conditions will not only occur, but in a manner that will impact the relevant investments. Moreover, they provide examples wherein regulatory oversight resulted in annuity providers who were at a high risk of default due to their practices and financial situations being taken over by regulators, analyzed, and placed into rehabilitation without apparent default occurring. Such allegations undermine Plaintiffs' argument that default is the likely outcome of all the alleged practices and factors because Athene is also subject to regulatory oversight, as demonstrated by Plaintiffs' allegation that they were subject to an investigation by the State of New York in 2019.

The Court also notes in particular that the 2022 NISA report on which Plaintiffs rely for certain allegations regarding Athene's creditworthiness indicates that Athene has an "A+" rating from an unidentified agency (which rating was seemingly relied upon by NISA as an accepted agency rating in the chart excerpt included in the Amended Complaint), and an "A" rating from Moody's, which Plaintiffs acknowledge is one of the "major ratings agencies." (Dkt. No. 56, at ¶¶ 99-100.) While it may be possible for a business to achieve higher ratings than these, the Amended Complaint acknowledges that an "A" credit rating from Moody's represents a five-percent rate of default for a period of twenty years. (Dkt. No. 56, at ¶ 99.) The Court has trouble reconciling a major credit rating agency's finding that Athene has a five-percent risk of default over a twenty-year period with a finding that it poses a substantial risk of default in a manner that would imminently prevent Plaintiffs from receiving their annuity payments.

For all of the above reasons,[9] the Court finds that Plaintiffs have not plausibly alleged that Athene is at a substantial risk of default in a manner that would threaten Plaintiffs' receipt of their promised annuity benefits and thus they have not shown an injury-in-fact to establish standing. The Court recognizes that it has reached a different conclusion on seemingly highly similar allegations than the court in *Konya v. Lockheed Martin Corp.*, 24-CV-0750, 2025 WL 962066 (D. Md. Mar. 28, 2025), but notes that court in *Konya* did not address many of the above points on which the Court bases its finding, either because it interpreted or balanced those allegations in a different manner, or because those specific allegations about Athene simply were not present in the complaint in *Konya*. The Court does note that, even as it found that the plaintiffs had alleged facts sufficient to show standing based on a future injury, the *Konya* court acknowledged that the decision there was a close call. *See Konya*, 2025 WL 962066, at *9 (noting that plaintiffs had "adequately alleged facts, if only barely so," to show an injury, and that they have "eked out" a sufficient injury to establish standing, and acknowledging that "the question on injury-in-fact presents a close call"). On the allegations before the Court here, the

---

[9] Because the Court has concluded that Plaintiffs have failed to establish a substantial risk of future harm for the above reasons based on Plaintiffs' allegations, it declines to consider alternative arguments made by both the GE Defendants and Defendant FCI to the effect that any harm to Plaintiffs is entirely speculative because a certain chain of events would need to happen before any default by Athene would result in a loss of promised benefits to Plaintiffs. Apart from the fact that the Court has already found grounds to dismiss Plaintiffs' Amended Complaint, the above-referenced alternative arguments are based in part on facts that are outside the scope of what Plaintiffs have alleged in the Amended Complaint, and, as discussed previously, generally Defendants appear to have raised only facial challenges related to jurisdiction. Those arguments also rely in part on the existence of a state guaranty association that would provide a backup at the end of the chain to protect Plaintiffs' benefits, but there have been insufficient factual allegations or record development regarding any such applicable association to render a finding related to that. The Court does note that similar arguments were the basis upon which the court in *Camire* made its finding that the plaintiffs there had failed to allege any sufficient future harm.

Court finds that Plaintiffs have not alleged facts to sufficiently establish an injury based on a substantial risk of future harm.

Based on all of the above, the Court concludes that Plaintiffs have failed to plausibly allege any injury-in-fact sufficient to establish standing to pursue their claims at this time. As a result, Plaintiffs' claims must be dismissed without prejudice for lack of subject-matter jurisdiction.

**ACCORDINGLY**, it is

**ORDERED** that Defendants' motions to dismiss Plaintiffs' Amended Complaint (Dkt. Nos. 69, 70) are **<u>GRANTED</u>**; and it is further

**ORDERED** that the Amended Complaint (Dkt. No. 56) is **<u>DISMISSED</u>** without prejudice for lack of subject-matter jurisdiction.

Dated: September 24, 2025
      Syracuse, New York

Glenn T. Suddaby
U.S. District Judge